UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

        Plaintiff,        Case No. 18-20495

v.

                              Hon. David M. Lawson

Ibraheem Izzy Musaibli,

        Defendant.
_____/

## Defendant's Motion for Order Limiting Extrajudicial Pretrial Statements by Parties

Ibraheem Izzy Musaibli, through his attorneys, the Federal Community Defender for the Eastern District of Michigan, moves this Court to enter a protective order restricting public communications by parties and their attorneys to prevent the substantial likelihood of prejudicial pretrial publicity and to both protect the administration of justice and Mr. Musaibli's due process rights.

After the filing of the superseding indictment in this case, the Department of Justice posted a press release that included prejudicial extrajudicial statements about Mr. Musaibli. Given the nature of the statements, they pose a substantial likelihood of prejudicing Mr. Musaibli's

1

right to a fair trial. To preserve Mr. Musaibli's right to a fair trial, a protective order must be entered.

In support of this request, Mr. Musaibli states:

1. Mr. Musaibli was originally indicted with Providing and Attempting to Provide Material Support to a Designated Foreign Terrorist Organization.

2. Recently, the government filed a superseding indictment with three additional charges against Mr. Musaibli: Conspiracy to Provide Material Support to a Foreign Terrorist Organization; Possessing and Discharging a Firearm (Machine Gun) in Furtherance of a Crime of Violence; and Receipt of Military-Type Training from a Foreign Terrorist Organization.

3. The day after the filing of the superseding indictment, the Department of Justice issued a press release about Mr. Musaibli's pending case. *See Michigan Man who Joined ISIS is Charged with Additional Offenses*, U.S. Dept. of Justice (Apr. 10, 2019).

4. The press release includes statements from Assistant Attorney General for National Security John C. Demers, United States Attorney Matthew J. Schneider, and FBI Special Agent in Charge Timothy R. Slater.

5. The extrajudicial statements pose a substantial likelihood of prejudice to Mr. Musaibli's right to a fair trial.

6. Multiple news agencies disseminated the prejudicial extrajudicial statements.

7. The only remedial measure that will prevent prejudice to the parties' fair trial rights is the imposition of a protective order restricting public communications by the parties, their attorneys, and government law enforcement assisting in the prosecution of Mr. Musaibli. No other restrictive alternative measures would protect the parties' interests.

8. The Government does not concur in the relief requested.

Submitted,

s/James Gerometta
James R. Gerometta
Miriam Siefer
Fabián Rentería Franco
Attorneys for Mr. Musaibli
FEDERAL COMMUNITY DEFENDER
613 Abbott Street, 5th Floor
Detroit, Michigan 48226
Email: james_gerometta@fd.org
Phone: 313.967.5839
Facsimile: 313.962.0685

Dated: April 17, 2019

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

        Plaintiff,        Case No. 18-20495

v.

                              Hon. David M. Lawson

Ibraheem Izzy Musaibli,

        Defendant.
_____/

**Brief in Support of Defendant's Motion for Order
Limiting Extrajudicial Pretrial Statements by Parties**

Ibraheem Izzy Musaibli was originally indicted with Providing and Attempting to Provide Material Support to a Designated Foreign Terrorist Organization. The government filed a superseding indictment with three additional charges against Mr. Musaibli of the similar nature. The day after filing the superseding indictment, the United States Attorney's Office of the Eastern District of Michigan issued a press release regarding the newly issued superseding indictment filed in this case. *Michigan Man who Joined ISIS is Charged with Additional Offenses*, U.S. Dept. of Justice (Apr. 10, 2019) (Attachment 1).

1

## I. The Government's press release contains extrajudicial statements that will interfere with Mr. Musaibli's rights to a fair trial by an impartial jury.

The government's press release in this case includes statements that will substantially and likely prejudice potential jury members. In particular, the government's press release includes the following statement by Special Agent in Charge of the Detroit FBI Timothy R. Slater: "By traveling to Syria to train and fight as a member of ISIS, Mr. Mousaibli [sic] fought against coalition forces, which included members of the U.S. Military." Not surprisingly, this statement was seized upon by press and highlighted in news accounts of the new indictment. For example, Robert Snell of the Detroit News wrote, "Federal prosecutors accused Musaibli of fighting on behalf of ISIS against coalition forces, including members of the U.S. military." Robert Snell, *Islamic State fighters trained Dearborn man captured in Syria, feds say*, The Detroit News (Apr. 10, 2019), https://www.detroitnews.com/story/news/local/detroit-city/2019/04/10/isis-fighters-trained-dearborn-man-ibraheem-musaibli-feds-say/3421500002.

While SAC Slater appears to have misspelled Mr. Musaibli's name, there is no doubt that SAC Slater is referring to Mr. Ibraheem Musaibli. Not only are SAC Slater's extrajudicial statements substantially prejudicial and

opining on Mr. Musaibli's guilt, they carry a significant risk of misleading the public regarding the government's evidence against Mr. Musaibli. The government does not have evidence that Mr. Musaibli fought directly against the U.S. military. While the government may argue that Mr. Musaibli's alleged actions in support of ISIS were, in a larger sense, in opposition to goals of the U.S. military in the region, SAC Slater's statement reasonably leads the reader to believe that Mr. Musaibli was engaged in direct combat with members of the U.S. military.[1]

The effects of SAC Slater's extrajudicial statement are extremely prejudicial to Mr. Musaibli because statements made by attorneys and law enforcement are given more weight and credibility than other individuals. Further, these extrajudicial statements come after the majority of the proceedings have been under seal due to a protective order sought by the Government. *See* Stipulated Protective Order, Aug. 7, 2018, ECF No. 18 (stipulated protective order where defense counsel agreed that discovery materials will not be disclosed).

In addition to SAC Slater's statements, the press release included extrajudicial statements from Assistant Attorney General for National

---

[1] The Government has provided little evidence that Mr. Musaibli engaged in any combat or direct "fighting." However, the details, of this case are covered by a protective order.

3

Security John C. Demers and United States Attorney Matthew J. Schneider, both of whom made statements regarding the government's commitment to hold Mr. Musaibli accountable for his crimes and intimated his guilty. In isolation and cumulatively, these extrajudicial statements are likely to interfere with the rights of Mr. Musaibli to a fair trial by an impartial jury.

## II. This Court should limit pretrial communications to the press in order to prevent further taint of the jury pool.

The Supreme Court recognizes that "courts must take such steps by rule and regulation that will protect their processes from prejudicial outside interferences," and "[n]either prosecutors, counsel for defense, the accused, witnesses, court staff nor enforcement officers coming under jurisdiction of the court should be permitted to frustrate its function." *Sheppard* v. *Maxwell*, 384 U.S. 333, 363 (1966). "Few, if any, interests under the Constitution are more fundamental than the right to a fair trial by 'impartial' jurors, and an outcome affected by extrajudicial statements would violate that fundamental right." *Gentile* v. *State Bar of Nevada*, 501 U.S. 1030, 1075 (1991).

In *Gentile*, the Court held that the First Amendment did not prohibit a state bar rule imposing discipline on an attorney who made statements that the attorney knew or should have known created a substantial likelihood of

4

prejudice to his client at trial. *Gentile*, 501 U.S. at 1075. The Court explained that "[t]he outcome of a criminal trial is to be decided by impartial jurors, who know as little as possible of the case, based on material admitted into evidence before them in a court proceeding." *Id.* at 1070. "Extrajudicial comments on, or discussion of, evidence which might never be admitted at trial and ex parte statements by counsel giving their versions of the facts," said the Court, "obviously threaten to undermine this basic tenet." *Id.* For this reason, the speech of those participating before the courts can be "limited" based on a lesser showing than that required to limit speech about pending litigation by those who are not participants. *Id.* at 1072. The Court concluded that Nevada's "substantial likelihood of material prejudice" standard was a "constitutionally permissible balance between the First Amendment rights of attorneys in pending cases and the State's interest in fair trials." *Id.* at 1075.

The Court further recognized that "[e]ven if a fair trial can ultimately be ensured though *voir dire*, change of venue, or some other device, these measures entail serious costs to the system," and that a State has a substantial interest in preventing attorneys from imposing those costs. *Id.* at 1075. The Court also acknowledged that these less restrictive alternatives may not remedy the extrajudicial statements, "[e]xtensive *voir dire* may not

5

be able to filter out all of the effects of pretrial publicity, and with increasingly widespread media coverage of criminal trials, a change of venue may not suffice to undo the effects of [the extrajudicial] statements." *Id.* at 1075.

A statement is likely to have a substantial likelihood of materially prejudicing a criminal proceeding when it relates to an opinion on a defendant's guilt or innocence. Mich. Prof'l Conduct R. 3.6(a)(4). Professional rules of conduct governing prosecutors requires them to "exercise reasonable care to *prevent* investigators, law enforcement personnel, employees, or other persons assisting or associated with the prosecutor in a criminal case from making an extrajudicial statement that the prosecutor would be prohibited from making under [Michigan Professional Conduct] Rule 3.6." Mich. Prof'l Conduct R. 3.8(e) (emphasis added).

The government's extrajudicial statements continue to pose a substantial prejudicial effect because potential jury members are tainted through repeated exposure of such statements against Mr. Musaibli. Multiple news reports disseminated the prejudicial statements, including The Detroit News, Detroit Free Press, and NPR. *See* Robert Snell, *Islamic State fighters trained Dearborn man captured in Syria, feds say*, The Detroit News (Apr. 10, 2019); Teresa Balas, *Feds: Dearborn man was*

6

*trained by ISIS for 3 years,* Detroit Free Press (Apr. 10, 2019), https://www.freep.com/story/news/local/michigan/detroit/2019/04/10/isisi-dearborn-ibraheem-izzy-musaibli/3423088002/; Steve Carmody, *Dearborn man faces charges related to ISIS*, Michigan Radio NPR (Apr. 10, 2019), https://www.michiganradio.org/post/dearborn-man-faces-charges-related-isis.[2] And the government's prejudicial statements only elevate the interest in Mr. Musaibli's case and reifies the impact on the jury pool.

Here, the Court should impose a gag order to restrict extrajudicial statements that pose a substantial likelihood to prejudice this Court's ability to conduct a fair trial. Continued extrajudicial statements from the parties, attorneys, and FBI agents about this case and Mr. Musaibli create a substantial risk that the potential jury pool will be tainted by pretrial publicity. Mr. Musaibli's indictment received nationwide coverage and his case maintains substantial media attention throughout Michigan, as shown above. Such media coverage will persist and increase as trial approaches. In

---

[2] *See also* Rod Meloni, *Federal officials say Dearborn man arrested in Syria was trained as ISIS fighter*, Click on Detroit (Apr. 10, 2019), https://www.clickondetroit.com/news/federal-officials-say-dearborn-man-arrested-in-syria-was-trained-as-isis-fighter; Dave Herndon, *Man indicted for ties to ISIS; now faces separate conspiracy charge,* Press & Guide (Apr. 11, 2019), http://www.pressandguide.com/news/man-indicted-for-ties-to-isis-now-faces-separate-conspiracy/article_96eb4c10-5c7a-11e9-b6a9-2ffa12e4f5f6.html.

light of the media attention, less restrictive alternatives such as a change of venue, *voir dire*, sequestration, and jury instructions are insufficient to address the effects of enormous pretrial publicity.

## Conclusion

For the above reasons, this Court should enter a protective order restricting public communications by parties, their attorneys, and FBI agents to prevent the substantial likelihood of prejudicial pretrial publicity and to protect the administration of justice.

Submitted,

s/James Gerometta
James R. Gerometta
Miriam Siefer
Fabián Rentería Franco
Attorneys for Mr. Musaibli
FEDERAL COMMUNITY DEFENDER
613 Abbott Street, 5th Floor
Detroit, Michigan 48226
Email: james_gerometta@fd.org
Phone: 313.967.5839
Facsimile: 313.962.0685

Dated: April 17, 2019