UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
_____

UNITED STATES OF AMERICA,

        Plaintiff,

    v.

IBRAHEEM IZZY MUSAIBLI,
  aka Abu Shifa Musaibli,
  aka Abu 'Abd Al-Rahman Al-Yemeni,
  aka Abu Abdallah Al Yemeni,
  aka Abdallah Umar Al-Salih,
  aka Ibraheem 'Izd 'Umar Salih Musaibad,

        Defendant.

Case No. 18-20495

HON. DAVID M. LAWSON

_____

**UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO DISMISS FIRST SUPERSEDING INDICTMENT COUNT THREE FOR LACK OF JURISDICTION**
_____

The United States of America respectfully submits this response to the defendant's motion to dismiss Count Three of the First Superseding Indictment, charging him with section 924(c), for lack of jurisdiction. The defendant argues that section 924(c) cannot reach criminal acts committed outside the United States and the alleged criminal acts, possession of a machine gun in furtherance of providing material support to the Islamic State of Iraq and al-Sham ("ISIS"), occurred in ISIS-controlled territory in Syria and Iraq. The defendant's motion should be denied

because the plain language of section 924(c) applies to any federal crime of violence, including those with extraterritorial jurisdiction like the predicate crime here of providing material support to a designated terrorist organization. Further, section 924(c) is an ancillary offense which has extraterritorial application when the predicate crime itself has extraterritorial reach.

I.    **FACTUAL BACKGROUND**

In April 2015, the defendant left the United States for Yemen. He spent approximately six months in Yemen before leaving to join ISIS. The defendant traveled through a few countries prior to crossing into Syria through Turkey. By late October or early November 2015, the defendant was with ISIS in Raqqa, Syria, the capital of ISIS at that time. There, the defendant attended a ten-day ISIS religious training camp. He then traveled with other ISIS members to Mosul, Iraq, where he attended an ISIS military training camp. The military camp included training on traversing terrain with a machine gun, shooting a machine gun, and conducting ambush techniques. Upon graduation from the ISIS military training camp, the defendant swore allegiance to ISIS and its leader, Abu Bakr Al-Baghdadi.

At the end of the training camp, ISIS assigned the defendant to a military brigade and issued him a Kalashnikov assault rifle, a vest, magazines, and grenades. The defendant's Kalashnikov weapon had a selector switch that allowed the weapon to fire in single shot or fully automatic mode. The defendant went with other ISIS

members of his military brigade, armed with Kalashnikov assault rifles, grenades, and RPGs, to Hit, Iraq. There, a battle was going on (although the defendant claimed to law enforcement to have only conducted ribat, not direct fighting, in this town). Ribat is a form of armed guard duty where ISIS fighters protect the front line of the battle against enemy advancement.

The defendant remained with ISIS for over two and one-half years. By November 2016, the defendant was with ISIS in Dayr Az Zawr, Syria, one of ISIS' remaining strongholds at that time. The defendant admitted to law enforcement that he conducted armed guard duty and fought on behalf of ISIS against the Syrian Army while in Dayr Az Zawr. He claimed to recall only firing his weapon twice at Syrian military positions.

As ISIS lost territory, the defendant retreated with the terrorist group. Eventually, Syrian Democratic Forces captured the defendant and turned him over to the FBI. In July 2018 he was flown back to the United States to face terrorism-related charges.

## II. ARGUMENT

### A. The Plain Language of Section 924(c) Applies To Federal Crimes of Violence With Extraterritorial Reach.

On April 9, 2019, a federal grand jury returned a First Superseding Indictment, charging the defendant in Count One with providing and attempting to provide material support to a designated terrorist organization, ISIS, in violation of

3

18 U.S.C. § 2339B.  That count specifically alleges that the conduct occurred in the Eastern District of Michigan and "within the extraterritorial jurisdiction of the United States."  (Doc. 48 at 1).  Count Three of the Superseding Indictment charges that, between October 2015 and June 2018, the defendant possessed a machine gun and discharged a firearm in furtherance of a crime of violence, that is, providing material support to ISIS, as set forth in Count One of the Superseding Indictment, in violation of 18 U.S.C. § 924(c).  *Id.* at 3.

Although not specifically alleged in the indictment, as described above, the factual basis for Count Three rests on conduct which occurred exclusively outside the territory of the United States in ISIS-controlled territory in Syria and Iraq.  This fact, the defendant concludes, warrants dismissal of Count Three.   In his motion, the defendant contends that he cannot be prosecuted under section 924(c) for any acts that occurred outside the United States because the statute does not expressly include a provision authorizing the exercise of extraterritorial jurisdiction.  The defendant bases his argument on the presumption that a statute applies only to conduct within the United States absent an expressed congressional intent to the contrary. *Morrison v. National Australia Bank LTD.*, 561 U.S. 247, 255 (2010). The defendant points to section 924(c)'s silence as to its extraterritorial reach and concludes that the presumption of its exclusive domestic application, therefore, applies.

4

A superficial reading of section 924(c)'s language does not, however, end the inquiry. "A federal statute is not necessarily limited to crimes committed within the territorial jurisdiction of the United States because it lacks an express provision that it should be applied extraterritorially." *United States v. Birch*, 470 F.2d 808, 811 (4th Cir. 1972) (citing *United States v. Bowman*, 260 U.S. 94, 97 (1922)). Section 924(c) applies to "any person who, during and in relation to any crime of violence . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime possesses a firearm." The statutory language includes no qualification or limitation restricting its application to federal crimes of violence committed only within the United States. By its express language, section 924(c) applies to all federal crimes, including those like 18 U.S.C. § 2339B, which have extraterritorial reach. 18 U.S.C. § 2339B(d)(1)(C). "The plain language of § 924(c) demonstrates that Congress intended the provision to apply to *any* acts that, under other legislation, may be prosecuted in the federal courts." *United States v. Belfast*, 611 F.3d 783, 811 (11th Cir. 2010). Thus, the presumption of exclusive domestic application is rebutted by the plain language of section 924(c), and therefore a section 924(c) charge can arise out of extraterritorial conduct that is found to be in violation of the material support statute.

    **B.**    **Extraterritorial Jurisdiction Exists for the Section 924(c) Because the Predicate Material Support Crime has Extraterritorial Application.**

In addition, section 924(c) is an ancillary statute that is predicated on the commission of an underlying federal crime. *Belfast*, 611 F.3d at 815 (section 924(c) "plainly[] is an ancillary statute that relies on the existence of a separate substantive crime . . ."). "It is generally the rule that a statute ancillary to a substantive offense statute is presumed to have extraterritorial [effect] if the underlying substantive offense statute is determined to have extraterritorial effect." *Id.* at 814 (quoting *United States v. Reumayr,* 530 F.Supp.2d 1210, 1219 (D.N.M.2008); *United States v. Ali*, 718 F.3d 929, 939 (D.C. Cir. 2013) ("the extraterritorial reach of an ancillary offense . . . is coterminous with that of the underlying criminal statute"); *United States v. Laden*, 92 F. Supp. 2d 189, 197 (S.D.N.Y. 2000) ("a statute that is ancillary to a substantive offense statute will be presumed to have extraterritorial effect if the underlying substantive statute is first determined to have extraterritorial effect").

Numerous courts have specifically addressed the issue of section 924(c)'s extraterritorial application and have uniformly ruled that it has such reach when the underlying felony has extraterritorial jurisdiction. *United States v. Shibin*, 722 F.3d 233, 246 (4th Cir. 2013) (Section 924(c) is "an ancillary crime that depends on the nature and reach of the underlying crime. Thus, its jurisdictional reach is coextensive with the jurisdiction of the underlying crime."); *United States v. Siddiqui*, 699 F.3d 690, 700 (2d Cir. 2012), *as amended* (Nov. 15, 2012) ("As for §

6

924, . . ., every federal court that has considered the issue has given the statute extraterritorial application where, as here, the underlying substantive criminal statutes apply extraterritorially"); *Belfast*, 611 F.3d at 814 ("Section 924(c) is plainly an ancillary statute that relies on the existence of a separate substantive crime; here, the substantive crime is torture, and that crime properly has extraterritorial effect"); *United States v. Apodaca*, 275 F. Supp. 3d 123, 151 (D.C. Cir. 2017)(" . . . courts have universally held that where the predicate offense applies extraterritorially, so does 924(c)"); *United States v. Khatallah*, 151 F.Supp.3d 116, 136 (D.D.C. 2015) (joining "other courts in holding that § 924(c) applies abroad insofar as its predicate 'crime of violence' may be prosecuted extraterritorially."); *United States v. Ahmed,* 94 F. Supp. 3d 394, 413 (E.D.N.Y. 2015) ([T]his Court looks to the predicate offenses to determine the extraterritorial reach of § 924(c). Here, the predicate crimes of violence relate to international terrorism, and . . . Congress clearly and explicitly gave those statutes extraterritorial effect."); *United States v. Naseer*, 38 F. Supp. 3d 269, 272 (E.D.N.Y. 2014) ("Because the Section 924(c) destructive device charge is an ancillary crime that depends on the nature and reach of the underlying crime—in this case, material support—its jurisdictional reach is coextensive with the jurisdiction of the underlying crime."); *United States v. Hasan*, 747 F.Supp.2d 642, 684 (E.D. Va. 2010) (finding that section 924(c) had extraterritorial reach based on predicate crime of violence); *United States v.*

*Reumayr*, 530 F.Supp. 2d at 1219 (holding that section 924(c) applied extraterritorially in case against Canadian citizen involved in bombing plot); *United States v. Tolliver,* No. 05-cv-80369, 2007 WL 3227592, at *3 (E.D. Mich. Nov. 1, 2007) (declining to dismiss section 924(c) count where the underlying statute had extraterritorial effect).

The district court for the District of Columbia in *Khatallah* noted that, for ancillary statutes like section 924(c), the use of the word, "any," "maximize[s] a derivative offense's geographic reach by linking it to that of the predicate crime." 151 F.Supp.3d at 136. The *Khatallah* Court drew the following analogy:

> For example, nothing in the general federal conspiracy statute reveals the slightest concern with overseas criminality. But when Congress prohibited "conspir[ing] ... to commit *any* offense against the United States," 18 U.S.C. § 371 (emphasis added), it affirmatively authorized extraterritorial conspiracy prosecutions insofar as the underlying federal crime were found to reach abroad. This principle also applies to such classic ancillary offenses as aiding and abetting and serving as an accessory after the fact.

*Id.*

While there is a presumption that statutes apply exclusively within the United States absent a clear Congressional intent to the contrary, given that ancillary offenses are based on predicate offenses, it is the jurisdiction of the predicate offense that reveals Congress's intent as to whether the presumption has been rebutted and extraterritorial jurisdiction exists.

8

*Ahmed*, 94 F.Supp.3d at 413. Congress did not need to include separate jurisdictional language in an ancillary statute like section 924(c) because the statutory language of the predicate federal crime supplies the extent of the jurisdiction intended by Congress. As one district court explained:

> Section 924(c) adds a weapon to the Government's arsenal whenever a criminal uses a gun. Given that Congress clearly intended the predicate statutes under which the Government charges [the defendant] to have extraterritorial application . . . it may be inferred that, as in the case of any ancillary statute, Congress also intended to equip the Government with § 924(c)'s added power whenever a defendant uses a gun "in relation to" crimes punishable by those statutes. *Yousef,* 327 F.3d at 87–88. As a result, the Court holds that § 924(c) applies extraterritorially where the Government can prosecute a defendant's underlying extraterritorial "crime of violence or drug trafficking crime.

*United States v. Mardirossian*, 818 F. Supp. 2d 775, 777 (S.D.N.Y. 2011); *see also*, *Bin Laden,* 92 F.Supp.2d at 201 (because "Congress intended those Subsections [18 U.S.C. §§ 844(f)(1) and (f)(3) ] to apply extraterritorially ... we conclude that this ancillary provision [section 924(c)] likewise applies extraterritorially . . .").

The defendant simply cannot surmount the body of case law stacked against his position. Indeed, the defendant acknowledges that "[c]ourts examining 924(c)'s extraterritorial jurisdictional application have found that it applies to offenses committed outside the United States if the underlying predicate offense supporting the 924(c) has extraterritorial jurisdiction." (Doc. 60 at 5). The defendant cites no case that holds to the contrary or makes the ruling he now seeks

9

from this Court. Every court that has examined this issue has concluded that section 924(c) has extraterritorial application when the underlying predicate crime of violence has extraterritorial reach. The defense contends, however, that every one of these courts wrongly decided the issue. The defendant points to section 924(c)'s legislative history and notes that the language "whoever uses a firearm to commit any felony which may be prosecuted in the United States" was added to ensure that the statute only applied to federal crimes, not state crimes. The defense concludes that this legislative history, therefore, does not evince a clear intent to confer extraterritorial jurisdiction and therefore none exists. There is nothing in the legislative history, however, to suggest that section 924(c) was intended to apply only to domestic conduct. The plain language of the statute embraces all federal crimes, including those with extraterritorial reach. *Ahmed*, 2012 WL 983545 at \*n.3 ("Lawmakers chose to enact language unambiguously extending the statute's reach to any crime prosecutable in the courts of the United States"); *In re Lucas*, 924 F.2d 597, 600 (6th Cir. 1991) ("It is an axiom of statutory construction that resort to legislative history is improper when a statute is unambiguous).

**C. CONCLUSION**

For these reasons, the government respectfully requests that the Court deny defendant's motion to dismiss Count Three of the First Superseding Indictment.

          MATTHEW SCHNEIDER
          United States Attorney

          s/*Cathleen M. Corken*
          Cathleen M. Corken
          Assistant United States Attorney
          211 W. Fort Street, Suite 2001
          Detroit, MI 48226
          Cathleen.corken@usdoj.gov
          (313) 226-9100

          s/*Kevin Mulcahy*
          Kevin Mulcahy
          Assistant United States Attorney
          211 W. Fort Street, Suite 2001
          Detroit, MI 48226
          Kevin.mulcahy@usdoj.gov
          (313) 226-9100

Date: May 22, 2019

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 22, 2019, I electronically filed the foregoing document using the ECF system, which will send notification of filing to the counsel of record.

s/Cathleen M. Corken<br>Assistant U.S. Attorney