UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

                  Plaintiff,          Case No. 18-20495

    v.

                                Hon. David M. Lawson

Ibraheem Izzy Musaibli,

                  Defendant.

_____/

## Defendant's Motion to Suppress Statements Made During Custodial Interrogation

Defendant, Ibraheem Izzy Musaibli, through his attorneys, moves this Court to enter an order excluding from evidence the Defendant's custodial statements made on or about July 23, 2018, and July 24, 2018, because they were taken in violation of the Defendant's Fifth Amendment right against compelled testimony.  Defendant files a supporting brief and states that:

1.    Mr. Musaibli is charged by superseding indictment with: Providing and Attempting to Provide Material Support to a Designated Foreign Terrorist Organization, in violation of 18 U.S.C. § 2339B; Conspiracy to Provide Material Support to a Foreign Terrorist Organization, in violation of 18 U.S.C. § 2339B; and Receipt of

1

Military Type Training from a Foreign Terrorist Organization (ISIS), in violation of 18 U.S.C. § 2339D(a).

2.  The Government disclosed Mr. Musaibli's custodial statements made in flight from Kuwait to the United States on July 23, 2018, and July 24, 2018, as well as statements made immediately upon landing in Gary, Indiana, on July 24, 2018.

3.  On or about June 9, 2018, Mr. Musaibli turned himself into the Syrian Democratic Forces (SDF), a majority Kurdish militia force backed by the United States.

4.  During his approximately six weeks in SDF custody, Mr. Musaibli was housed in an overcrowded prison and subject to violence by inmates and guards.

5.  While in SDF custody, Mr. Musaibli was interrogated.

6.  During these interrogations, Mr. Musaibli was threatened with physical violence, struck repeatedly, and spit upon.

7.  After approximately six weeks, Mr. Musaibli was transferred directly from the custody of the Syrian Democratic Forces (SDF) to the Federal Bureau of Investigation (FBI).

8.  The FBI took custody of Mr. Musaibli at 10:10 p.m. local time.

9.   When Mr. Musaibli was transferred to FBI custody, he was handcuffed, blindfolded, and then had additional sensory deprivation gear placed on him.

10.  The FBI did not remove this gear for any appreciable period of time until he was interrogated during the flight to the United States, at the equivalent of 6:00 a.m. Syrian time

11.  Between being taken into FBI custody and the interrogation, Mr. Musaibli briefly fell asleep twice, once for twenty minutes and once for just under an hour.  He was still under restraints and with sensory deprivation gear during that time.

12.  He had not eaten since late afternoon on the day his custody was transferred, and was not offered food again until after the interrogation had been ongoing for an hour.

13.  The net effect of his extended time in SDF custody, previous custodial interrogations, and the sensory, food, and sleep deprivation was the creation of a coercive environment that caused Mr. Musaibli's pre-interrogation waiver of his Miranda rights to be involuntary, and additionally rendered Mr. Musaibli's statements involuntary

3

14.    On July 24, 2018, some hours after the inflight questioning, Mr.
       Musaibli was questioned when he arrived in Gary, Indiana, in the
       interim before being driven to Detroit for his initial appearance
       before this Court.

15.    This questioning was a direct follow up to the questioning during
       the flight and was not sufficiently attenuated to cure the invalid
       Miranda waiver or the coercive environment attending the in-flight
       questioning so as to make the subsequent statements voluntary for
       Fifth Amendment purposes.

16.    Mr. Musaibli's waiver of his presentment rights before the
       interrogation in Gary, Indiana likewise was not knowing and
       voluntary due to the circumstances surrounding that waiver.

17.    Per Local Rule 7.1(a), defense counsel communicated with the
       Government regarding this Motion and it does not concur with the
       requested relief.

   //

   //

   //

   //

   //

For the reasons indicated above, Defendant requests that this Court hold an evidentiary hearing, make findings of fact, and enter an Order excluding from evidence Defendant's custodial statements as the product of an invalid Miranda waiver and as constitutionally involuntary, and in addition in violation Federal Rule of Criminal Procedure 5(a).

Submitted,

s/James R. Gerometta
James R. Gerometta
Fabián Rentería Franco
Counsel for Ibraheem I. Musaibli
FEDERAL COMMUNITY DEFENDER
613 Abbott Street, Suite 500
Detroit, Michigan 48226
Email: james_gerometta@fd.org
Phone: 313.967.5542
Facsimile: 313.962.0685

John A. Shea (P37634)
Counsel for Ibraheem I. Musaibli
120 N. Fourth Avenue
Ann Arbor, Michigan 48104
(734) 995-4646
Dated:  December 31, 2020        jashea@earthlink.net

5

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

                      Plaintiff,            Case No. 18-20495

      v.

                                     Hon. David M. Lawson

Ibraheem Izzy Musaibli,

                      Defendant.

_____/

## Brief in Support of Defendant's Motion to Suppress Statements Made During Custodial Interrogation

Ibraheem Musaibli was charged on April 9, 2019, in a four-count superseding indictment with Providing and Attempting to Provide Material Support to a Designated Foreign Terrorist Organization, in violation of 18 U.S.C. § 2339B; Conspiracy to Provide Material Support to a Foreign Terrorist Organization, in violation of 18 U.S.C. § 2339B; Possessing and Discharging a Firearm (Machine Gun) in Furtherance of a Crime of Violence, in violation of 18 U.S.C. § 924(c); and Receipt of Military Type Training from a Foreign Terrorist Organization (ISIS), in violation of 18 U.S.C. §2 339D(a). On July 29, 2019, Count 3, the § 924(c) charge, was dismissed.  The other three counts remain pending and trial is set for the fall of 2021.

1

As part of discovery, the Government disclosed two custodial statements made by Defendant Ibraheem Musaibli to Federal Bureau of Investigation Special Agent Wendy Kerner, one made during his flight to the United States on July 23-24, 2018, and a second statement in Gary, Indiana on July 24, 2018. The FBI received custody of Mr. Musaibli from the Syrian Democratic Forces (SDF), a Kurdish majority U.S.-backed militia group, at approximately 10:20 p.m. local (Syrian) time on the day he was interrogated.

While in SDF custody for about six weeks, Mr. Musaibli was interrogated by SDF officers, and those interrogations included threats, physical assaults, and being spit on. He was subjected to sensory deprivation by the SDF during his period of custody there too.

During his transfer from SDF forces to FBI custody, and then for a time during the military flight to the United States, Mr. Musaibli wore sensory deprivation gear until his interrogation started. By that time, Mr. Musaibli had slept less than two hours in the previous twentyfour-hour period, had not eaten since late afternoon the previous day, and did not eat until after the first part of his interrogation started. The net effect of the abuse by the SDF, and sensory, sleep, and food deprivation (to which the FBI contributed) was the creation of a coercive environment that made it impossible for him to

2

knowingly and intelligently waive his Fifth Amendment right against self-incrimination, or to provide a voluntary statement.

## Facts

After approximately two and one-half years of living in Syria and Iraq, spending much of his time imprisoned or living on the streets and sleeping in mosques, Ibraheem Musaibli was desperate to escape ISIS territory. Mr. Musaibli turned himself over to advancing SDF forces. He did so at the urging of Federal Bureau of Investigation Special Agent Wendy Kerner.

Once in SDF custody, Mr. Musaibli was taken to Hasakah Prison. Hasakah Prison had been used by the Assad regime, ISIS, and now the SDF. Hasakah Prison was over crowded, perhaps six inmates slept in a 10' x 10' cell, often without mattresses. The heat was oppressive and inmates could not sleep. There was often a shortage of edible food and drinkable water. Violence was common among prisoners and guards did little to interfere. Mr. Musaibli was known among ISIS members as being critical of ISIS leadership and for defending other rebel groups, and so he was a frequent target of radical inmates.

Mr. Musaibli was interrogated several times while in Hasakah Prison. During these interrogation, SDF officers remove Mr. Musaibli from the full cell, cover his head so he could not see, and transport him to an interrogation

room.  Mr. Musaibli would then face an interrogator with a guard standing behind him.  The interrogations typically began with threats to transfer Mr. Musaibli to the custody of the Iraqi army.  At this time the Iraqi army was rumored to be killing prisoners suspected of having current or former ties with ISIS.  The most common statement by his interrogators was a guarantee that he would be sexually assaulted while in Shia hands.  When threats failed to produce information the SDF thought Mr. Musaibli had, Mr. Musaibli would be struck from behind by the guard or spit on by the interrogator.  This type of interrogation occurred several times in the approximately six weeks he was in SDF custody prior to the FBI being made aware of his presence.

Mr. Musaibli was able to make the FBI aware that he was in SDF custody by having another prisoner who was being interrogated by the United States government deliver a message.  Once the FBI was aware of his presence he was briefly interviewed and "biometrically enrolled."  He was then transferred to another facility.  After a stay of perhaps two weeks, the FBI took custody of Mr. Musaibli.  Because of the conditions at this prison, Mr. Musaibli had not slept well for days and entered FBI custody already suffering the effects of exhaustion and sleep deprivation.

When the FBI took custody of Mr. Musaibli, their first act was to replace the handcuffs and blindfold placed on him by his SDF captors, and

similarly restrain him including fitting him with "blackout" googles so he could not see.  This occurred on July 23, 2018, at 10:20 EET (the local Syrian time zone).[1]  He was transferred by van to an airfield, airlifted to an airbase in Kuwait, then transferred to a larger plane for his trip to the United. States. That plane departed for the United States at 5:20 a.m. EET on July 24, 2020 (local time).  At some point prior to departure, Mr. Musaibli also was fitted with noise cancelling ear coverings.

The blackout googles and ear coverings were not removed until 6:00 a.m. EET, when SA Kerner began her interrogation of Mr. Musaibli.  Prior to this time, Mr. Musaibli had only slept briefly during his first flight out of Syria.  His only sleep was two short periods, one of approximately twenty minutes and one of just under one hour, while under restraints.  He was not offered food until after an hour of interrogation, after 7:00 a.m. EET.  The interrogation continued in several segments as agents broke to confer and then restarted the interrogation.  Near the end of one of these segments at 8:10 p.m. EET, SA Kerner had Mr. Musaibli sign a waiver of presentment to a magistrate judge.

---

[1]     The FBI log provides time in Eastern Standard Time.  These times have been converted to local time in Syria to more accurately reflect the effect of the transportation and sleep lag on Mr. Musaibli.

Mr. Musaibli landed in Gary, Indiana, approximately 23 hours after being taken into custody by the FBI.  In addition to the approximately 1 hour and 20 minutes he slept during his first flight from Syria to Kuwait, Mr. Musaibli's only other sleep occurred during two brief periods after his interrogation in flight to the United States, the first for not more than 1 hour and 30 minutes, and the second for not more than 2 hours.  Upon his arrival in Gary, Indiana, conducted another follow up interview before transporting him by land to Detroit.

## Argument

**The Inherently Coercive Environment in which the Defendant was Interviewed Made It Impossible for Him to Knowingly and Voluntarily Waive His *Miranda* and Rule 5 Presentment Rights.  Those Same Conditions Rendered His Statements Involuntary to the FBI While in Their Custody.**

### A. Mr. Musaibli's Miranda waiver was not knowing and voluntary.

In order to introduce a defendant's custodial statement at trial, the prosecution must prove that defendant voluntarily, knowingly, and intelligently waived his *Miranda* rights.  *Miranda v. Arizona*, 384 U.S. 436, 475 (1966).  The Government must prove, by a preponderance of the evidence, that any waiver was an uncoerced choice and that the defendant understood the rights being waived and the consequences of the waiver.

6

*Moran v. Burbine*, 475 U.S. 412 (1986). Courts are to consider the totality of the circumstances in determining whether the waiver was knowing and voluntary.

The FBI's interrogation of Mr. Musaibli and the obtaining of his *Miranda* waiver was inherently coercive. The obtaining of the waiver occurred after weeks in the custody of the SDF, weeks where he was kept in extremely difficult conditions of imprisonment, and on the heels of hours in sensory deprivation gear while deprived of sleep and food, and additionally with no experience in the criminal justice system and fearful of what would happen next. Because of his prior extrajudicial detention at the hands of U.S. allies and his prior coerced statements to SA Kerner over instant messaging applications, he could not appreciate the rights he was waiving or the deleterious consequences of the waiver. Mr. Musaibli's waiver of his rights was not knowing and voluntary within the meaning of Fifth Amendment jurisprudence.

**B. Mr. Musaibli's statements to the FBI while under their custody were not voluntary.**

The burden is on the government to prove by a preponderance of the evidence that a defendant's statement is voluntary. *Lego v. Twomey,* 404 U.S. 477, 487-89 (1972). When deciding whether a statement is involuntary,

courts must consider the totality of circumstances. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973). No one factor is dispositive; courts must evaluate all facts together to determine if "a defendant's will was overborne." *Id.* In the Sixth Circuit, courts should examine the record to see (1) if "the police activity was objectively coercive"; (2) if the coercion . . . was sufficient to overbear the defendant's will"; and (3) if the police misconduct was "the crucial motivating factor in the defendant's decision to offer the statement." *United States v. Mahan*, 190 F.3d 416, 422 (6th Cir. 1999) (citing *McCall v. Dutton*, 863 F.2d 454, 459 (6th Cir. 1988)).

The use of physical violence to extract a confession is an obvious violation that renders a confession involuntary, *Brown v. Mississippi*, 297 U.S. 278 (1936), as are credible threats of physical violence. *Arizona v. Fulminante*, 499 U.S. 279, 287 (1991). Conditions of confinement can also render a confession involuntary. The Supreme Court has found that incommunicado detention for days, during which a defendant is cut off from family and friends, renders a confession involuntary. *Reck v. Pate*, 367 U.S. 433, 441-42 (1961); *Turner v. Commonwealth*, 338 U.S. 62 (1949). The coercive conduct need not originate from the United States government. Where there is not a "clean break" between the conduct of foreign actors and an interrogation by United States government officials, the coercive activity

8

of the foreign actors can taint any statements to U.S. interrogators. *United States v. Karake*, 443 F.Supp. 2d 8, 87-89 (D.D.C. 2010).

Mr. Musaibli was held incommunicado from his family and even the FBI for a month by the SDF in squalid conditions. During that time, he faced threats of sexual assault and torture, was hit and spit upon, and was unsure if he would ever be released. When the FBI finally learned of his presence and came to take custody of him, they did nothing to calm his fears. After days without sleep, he was transported for hours in sensory deprivation gear on military aircraft. He was under constant guard by multiple agents. He was confronted with his earlier statements, which the FBI had induced by threatening to leave him in Syria to be captured or killed. *See* Defendant's Motion to Suppress Statements Made During His Interrogation Over Remote Messaging Applications and Custodial Statements Tainted by the Involuntary Statements Made During This Interrogation (to be docketed).

An evidentiary hearing will reveal conditions in Syria and during transit to the United States were so inherently coercive as to overbear the will of Ibraheem Musaibli and render his statements involuntary in violation of the Fifth Amendment.

//

**C. Mr. Musaibli's statements in Gary, Indiana should be suppressed under the *McNabb-Mallory* rule.**

This Court should suppress any and all statements made by Mr. Musaibli upon arrival within the U.S. territory under 18 U.S.C. § 3501(c) and the *McNabb-Mallory* rule because of the delay in presentment before a magistrate judge. *See McNabb v. United States*, 318 U.S. 332 (1943); *Mallory v. United States*, 354 U.S. 449 (1957).

"[P]rompt presentment" is required of a law enforcement officer to take an arrested person before a magistrate judge "as soon as he reasonably could." *Corley v. United States*, 556 U.S. 303, 306 (2009). Originally a common law rule, this requirement was codified into Federal Rule of Criminal Procedure 5(a). *Corley*, 556 U.S. at 307-08. The Supreme Court's *McNabb-Mallory* rule provides that "an arrested person's confession is inadmissible if given after an unreasonable delay in bringing him before a judge." *Corley*, 556 U.S. at 306.

Section 3501(c) provides a six-hour "safe harbor" in which a delay of six hours or more between arrest and presentment is unreasonable and not admissible. 18 U.S.C. § 3501(c). If a "confession occurred before presentment and beyond six hours, however, the court must decide whether delaying that long was unreasonable or unnecessary under the *McNabb-*

10

*Mallory* cases, and if it was, the confession is to be suppressed.  *Corley*, 445 U.S. at 322.

Towards the end of Mr. Musaibli's coercive reinterrogation by the FBI, he signed the government's waiver of prompt appearance before a magistrate judge.  His waiver occurred at 1:10 p.m. EST (8:10 p.m. EET) on July 24, 2018, almost 23 hours after he was taken into custody by U.S. government agents and 14 hours after the first interrogation began by SA Kerner and other agents.  All of this occurred after Mr. Musaibli suffered from lack of substantive sleep free of restraints, multiple interrogations, and while he was often subject to sensory deprivation.  His waiver was not volitional or a product of his free will and was coerced by the same unconstitutional government actions that rendered his *Miranda* waiver invalid and his statements involuntary.  He signed this waiver at the end of the serial interrogation on the flight from Kuwait to the United States and right before the government continued his sensory deprivation by putting the blackout goggles and ear coverings back onto him.  Mr. Musaibli landed in Gary, Indiana, soon thereafter.

Mr. Musaibli arrived to Gary and was immediately reinterrogated that early afternoon at the Gary International Airport.  The agents sought more incriminating statements from Mr. Musaibli, and while they reminded him

11

that he had *Miranda* rights, he was still not under any condition to resist the coercive nature of the government's conduct. Mr. Musaibli's waiver was not voluntarily entered within "an essentially free and unconstrained choice" – his "will ha[d] been overborne and his capacity for self-determination critically impaired." *Culombe v. Connecticut*, 367 U.S. 568 (1961) (omitting citation). A *Miranda* rewarning at that point does not abrogate and cure the coercive nature of the multiple interrogations and its effect on his Rule 5(a) presentment waiver. This is particularly true when, as the Supreme Court has stated, any "delay must not be of as a nature to give opportunity for the extraction of a confession." *Mallory*, 354 U.S. at 455; *see also Corley*, 556 U.S. at 308 ("delay for the purpose of interrogation is the epitome of 'unnecessary delay'"); *County of Riverside v. McLaughlin*, 500 U.S. 44, 61 (1991) (Scalia, J., dissenting) ("the only element bearing upon the reasonableness of delay was not such circumstances as the pressing need to conduct further investigation, but the arresting officer's ability, once the prisoner had been secured, to reach a magistrate.").

Here, the FBI agents should have taken Mr. Musaibli that early afternoon to the nearest federal courthouse. That courthouse was nine miles away at the U.S. District Court of Northern District of Indiana and had several magistrate judges presiding to present Mr. Musaibli. Instead, as

12

described previously, the government continued its interrogation of Mr. Musaibli almost sixteen hours after it began its first interrogation and twenty-six hours after it took him into federal custody.  The waiver and delay in presenting Mr. Musaibli before a magistrate judge was not valid.  Thus, Mr. Musaibli's statements upon arrival to the U.S. should be suppressed and barred from use at trial.

//

//

//

//

//

//

//

//

//

//

//

//

//

13

## Conclusion

Ibraheem Musaibli requests an evidentiary hearing so that the Court may make factual findings regarding the conditions of his confinement by the SDF, the conditions during his transport from Syria to the United States, and the circumstances underlying his waiver or presentment to the nearest federal magistrate upon arrival in Gary, Indiana.  This Court should enter an order excluding from evidence Mr. Musaibli's custodial statements to the FBI for violations of the Fifth Amendment's voluntariness requirement and for violation of Rule 5 of the Federal Rules of Criminal Procedure.

Submitted,

s/James R. Gerometta
James R. Gerometta
Fabián Rentería Franco
Counsel for Ibraheem I. Musaibli
FEDERAL COMMUNITY DEFENDER
613 Abbott Street, Suite 500
Detroit, Michigan 48226
Email: james_gerometta@fd.org
Phone: 313.967.5542
Facsimile: 313.962.0685

John A. Shea (P37634)
Counsel for Ibraheem I. Musaibli
120 N. Fourth Avenue
Ann Arbor, Michigan 48104
(734) 995-4646
jashea@earthlink.net

Dated:  December 31, 2020

## Certificate of Service

I certify that on December 31, 2020, I filed

- **Motion to Suppress Statements Made During Custodial Interrogation**

through the court's docketing system, which should send notification to opposing counsel of record.

/s/ Fabián Rentería Franco
Fabián Rentería Franco
Counsel for Ibraheem Musaibli
FEDERAL COMMUNITY DEFENDER
613 Abbott St., Suite 500
Detroit, MI 48226
P: 313.463.6143
Dated: December 31, 2020         E: Fabian_Renteria_Franco@fd.org

1