UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,                     CRIMINAL NO. 18-20495

v.                                  HON. DAVID M. LAWSON

IBRAHEEM IZZY MUSAIBLI,
    aka Abu Shifa Musaibli,
    aka Abu 'Abd Al-Rahman Al-Yemeni,
    aka Abdallah Umar Al-Salih,
    aka Ibraheem 'Izd 'Umar Salih Musaibad,

       Defendant.
_____/

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR BOND**

    Defendant Ibraheem Musaibli joined the terrorist group ISIS and lived in the Islamic State for more than two and a half years. He trained with them. He fought with them. He pledged allegiance to them. He recruited for them. He propagandized for them. In this case, Musaibli is being held to account for his material support to ISIS, facing terrorism charges that could send him to prison for up to 50 years. Musaibli now seeks his release from custody citing his displeasure with the Livingston County Jail. But Musaibli's continued disdain for America coupled with his repeated demands to be sent to Yemen make him both a flight risk and a danger to the community. Musaibli's motion for bond should therefore be denied.

# I
# RELEVANT FACTUAL BACKGROUND

Initially started by Abu Musab al-Zarqawi almost two decades ago, the terrorist organization now known as ISIS evolved from a few jihadis into the most feared terror group in the world. Zarqawi's 2006 death eventually ushered in the leadership of Abu Bakr al-Baghdadi. Between Zarqawi and Baghdadi, ISIS brought other jihadi groups into the fold in order to expand its membership and reach, ultimately covering much of Iraq and Syria. These moves culminated in a rare public sermon by Baghdadi on July 4, 2014, at the Grand Mosque of al-Nuri in Mosul. During his speech, Baghdadi formally declared the establishment of the Caliphate, proclaimed himself the Caliph or leader, and invited Muslims from around the world to come join the newly established Islamic State.

Ibraheem Musaibli was one of the tens of thousands of foreigners who answered Baghdadi's call. Although Musaibli was born in Michigan, he spent considerable time in Yemen—the country of his parents' birth and to which he feels a particular connection—throughout his youth. In 2015, Musaibli left the United States to spend a few months in Yemen before ultimately sneaking into Syria to join ISIS. By late October or early November 2015, the defendant had joined ISIS in Raqqa, Syria: ISIS's self-proclaimed capital. He then traveled with other ISIS members to Mosul, Iraq, where he attended an ISIS military training camp. The military camp included training on crossing terrain with a machine gun, shooting a

machine gun, conducting guard duty (known as Ribat), handling grenades, and conducting ambush techniques, among other combat-related skills. Upon graduation from the ISIS military training camp, the defendant swore allegiance to ISIS and its leader, Abu Bakr Al Baghdadi.

At the end of the training camp, ISIS assigned Musaibli to a military brigade and issued him a Kalashnikov assault rifle, a vest, magazines, and grenades. The defendant went with other ISIS members of his military brigade, armed with Kalashnikov assault rifles, grenades, and RPGs, to Hit, Iraq. There, Musaibli fought alongside other ISIS members as they tried to protect Hit from the advancing Coalition Forces. Musaibli engaged in combat in other areas and consistently conducted ribat on behalf of ISIS. Ribat is a form of armed guard duty where ISIS fighters protect the front line of the battle against enemy advancement.

During rests from the battlefield, Musaibli communicated frequently with friends and family through text applications and social media platforms. He spoke often of his disdain for America. In a July 2016 conversation with his cousin, Musaibli explained that he left America because it is "immoral," adding "I swear to God, one must not live in America because there is so much wickedness." About his parents, he opined, "They are mad at me because I always tell them to get out of the country of the infidels as the Prophet had advised." Musaibli frequently fought with his father about the United States, with the elder Musaibli suggesting his son ought

to be thankful for the benefits of being raised in the United States and the defendant responding by disparaging life in America.

Besides merely criticizing America, Musaibli explained how fighting with ISIS against the United States was, in his view, an obligation. In September 2016, when his former brother-in-law urged him to leave the Islamic State, Musaibli responded, "do you expect me to run away from my obligation?" Earlier that summer, he told his cousin that "the jihad against the Shiites and the Americans in Iraq" was his obligation. To other friends he simply said: "I am conducting jihad with the Islamic State against America and the Shi'ah country of Iran"; "I am here with ISIS participating in Jihad"; and "I came here and saw the truth. Jihad for the sake of God is the utmost sign of Islam." Musaibli told his father, "as for me I will never give up jihad even if my kids have to beg on the streets and I have to eat leaves from tree."

And Musaibli encouraged others to join the fight. In a May 2016 Facebook message, Musaibli told a distant relative to "sign up with us, the pleasure of the world are few." The relative pushed back against Musaibli's praise of ISIS, to which Musaibli responded "we do not kill Muslims, the news lies. I am telling you we are fighting Americans and their friends. Jihad is advance and retreat; ISIS will withdraw but will come back stronger than before. . . don't default on Jihad." That same month Musaibli encouraged his younger brother Abdullah to "come here so I

can make u a general." Musaibli later changed his advice, citing the increased Turkish presence at the border with Syria, and instead invited Abdullah to "join the Islamic State in Yemen or Qaeda." Besides relatives, Musaibli was involved in the attempted recruiting of other English speakers. An ISIS recruiter attempted to convince two British teenage brothers to come to the Islamic State. At one point, it appeared that the Brits' best path was through Yemen. The ISIS recruiter provided the teenagers with Musaibli's WhatsApp contact number and told them to message the number "when you get to Yemen, or a day before, he will organise (sic) and help you." Ultimately, British authorities arrested the teenagers prior to them leaving for the Islamic State.

In total, Musaibli spent more than two and a half years with the Islamic State. By early 2018, Musaibli sought to leave the Caliphate and return to Yemen. For nearly six weeks, Musaibli communicated overtly with the FBI who repeatedly offered opportunities for Musaibli to return to the United States. During this same timeframe, Musaibli frequently texted with his father who likewise encouraged Musaibli to return to America. But Musaibli refused. Instead, Musaibli attempted to be smuggled out of Syria but was captured by the Syrian Democratic Forces. Musaibli remained in SDF custody until he was turned over to the FBI. In July 2018, he was flown back to the United States.

## II
## RELEVANT PROCEDURAL HISTORY

Following his arrest, the defendant consented to detention pending trial. (ECF No. 11, PageID.16). In April 2019, a grand jury returned a superseding indictment against Musaibli charging him with providing material support to ISIS, conspiring to provide material support to ISIS, and attending a terrorist training camp. (ECF No. 48, PageID.104-108). The latter charge carries with it a mandatory term of 10 years in prison, and should he be convicted of all counts in the superseding indictment, Musaibli faces between 10 and 50 years in prison. *See* 18 U.S.C. §§ 2339B, 2339D. The defendant now seeks to be released on bond pending trial, citing negative housing conditions at the Livingston County Jail. (ECF No. 133, PageID.1187-1193).

## III
## ANALYSIS

The Bail Reform Act sets forth a series of factors this Court must evaluate in deciding whether any condition or combination of conditions will reasonably assure the appearance of the defendant and the safety of the community. *See* 18 U.S.C. § 3142(f), (g). Those factors, established in 18 U.S.C. § 3142(g), are: (1) the nature and circumstances of the offense; (2) the weight of the evidence against the person; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger posed by the defendant's release. *See* 18 U.S.C. § 3142(g). For cases

like this one where the charges include "federal crime(s) of terrorism," the Bail Reform Act establishes a rebuttable presumption in favor of detention. *See* 18 U.S.C. § 3142(e)(3)(C). Each of the section 3142(g) factors compels Musaibli's detention.

### A. The Nature and Circumstances of the Offenses

As to the nature and the circumstances of the offenses charged, two points are important here. First, Congress identified specific types of crimes it was most concerned about, including "whether the offense . . . is a Federal crime of terrorism." 18 U.S.C. § 3142(g)(1). All charges in the Superseding Indictment constitute Federal crimes of terrorism. *See* 18 U.S.C. § 2332(g)(5)(B).

Second, Congress did not limit the Court's evaluation of the offenses to merely the crimes charged (which already counsel strongly in favor of detention), but, rather, the Court may take a more holistic review of the nature and circumstances of the offenses. Here, Musaibli knowingly joined the most ruthless terrorist organization in the world. By the time Musaibli crossed into Syria, ISIS had infamously kidnapped journalists, beheaded foreigners, burned a caged Jordanian pilot alive, enslaved Yazidi women, and murdered thousands of others it declared "apostates." World leaders, including imams from virtually every country, denounced the atrocities ISIS committed.

Far from joining the world's outcry against the Islamic State, Musaibli moved there. He attended an ISIS training camp, pledged allegiance to its leader, and

engaged in battle on ISIS's behalf. ISIS only thrived because foreign fighters, like Musaibli, made the trip to the Islamic State to join the Caliphate's fight against Coalition Forces. Choosing to leave the United States to become a fighter for ISIS underscores Musaibli's dangerousness, poor decision-making, and anti-social personality. And his commitment to ISIS was significant, having stayed for more than two and a half years, refusing to accept the FBI's assistance to leave the group as it lost territory, and proclaiming ISIS's virtues to friends and family online. Musaibli's offenses were violent, extreme, and anti-American.

The nature and circumstances of these crimes favor detention.

### B. The Weight of the Evidence of Dangerousness and Nonappearance

The weight of the evidence of Musaibli's dangerousness and nonappearance is strong. Evidence shows that Musaibli was fully committed to ISIS. He left the United States, traveled through Yemen, Saudi Arabia, and Turkey, snuck into Syria, found ISIS members there, attended religious and military training camps, pledged allegiance, took up arms against Coalition Forces, guarded the front line (known as Ribat), told others to join ISIS, served as a point of contact in Yemen for the two British teenagers seeking to come to the Islamic State, and sung the group's praises to friends and family. Throughout the more than two and one-half years with ISIS, Musaibli made a series of decisions demonstrating his commitment to jihad. Even up to his last few weeks with ISIS, when he was overtly communicating with the

FBI, Musaibli waffled about whether to turn himself into authorities. Thus, this was not a blip on the radar of an otherwise law-abiding life. Instead, Musaibli's consistent support of ISIS demonstrates the kind of dangerous behavior and ideology that warrants pretrial detention.

Musaibli is also a flight risk. His communications about the United States shows that he has no interest in living in this country. Should he be released, Musaibli would attempt to find a way out. As ISIS fell and Musaibli sought to leave the group, his Facebook communications with the FBI consisted mainly of him rejecting the bureau's attempt to extricate him from the Islamic State and bring him home. Even during his pretrial detention in this case, Musaibli has written the government numerous times seeking to be sent to Saudi Arabia or Yemen. Musaibli wants nothing to do with the United States, considers living in the United States sinful, and is facing a significant amount of time in prison. There is no reason for him to appear for these proceedings and every reason, in his mind at least, for him to flee.

The weight of the evidence of Musaibli's dangerousness and risk of nonappearance favors detention.

### C. The History and Characteristics of the Offender

Section 3142(g) also asks this Court to evaluate Musaibli's history and character. Much of Musaibli's history is unremarkable: he worked for his parents'

perfume shop after dropping out of high school; he has had three failed marriages; he has rarely seen his four children (including not even having met two of them); and has few financial resources. Musaibli may have some physical and mental health issues, but none that support his release from custody.

Further supporting detention are Musaibli's character and past conduct. From October 2013 to March 2014, Musaibli attended a religious school in Dammaj, Yemen. This attendance coincided with the second of two sieges of the school by Shiite rebels known as Houthis. Houthis and students at the school (as well as local tribesmen) battled for several months. Eventually, the sides reached a ceasefire. Musaibli returned to the United States a few months after the fighting stopped. Throughout his communications with his father, Musaibli often referenced committing jihad while at the Dammaj.

Upon his return to the United States from Yemen, Musaibli continued to radicalize by watching videos of Yemeni-American Al Qaeda leader Anwar al-Awlaki. Musaibli's own family described how Musaibli turned ordinary conversations into talks about jihad. This radicalization eventually led to his decision to join ISIS. Thus, for the better part of a decade, Musaibli has been focused on a jihadi ideology that included the support of the world's most notorious terrorist organization. He joined after the formation of the Caliphate, after the atrocities of ISIS were known throughout the world, and right in the heart of the group's most

violent battles. Musaibli's character and past conduct favor his continued pretrial detention.

For his part, Musaibli's argument focuses almost exclusively on issues with his housing at the Livingston County jail. (ECF No. 133, PageID.1188-1189). Should the Court find that some of those concerns are valid, the Court could instruct the U.S. Marshal's Service to seek an alternative facility for the defendant's pretrial incarceration. But releasing Musaibli is not the answer to the issues he raised.

### D. Danger Posed by Release

The final factor under section 3142(g) similarly favors detention. The danger posed by releasing Musaibli cannot be overstated. Musaibli despises this country and supports violent extremism. Throughout their history ISIS has encouraged supporters to conduct terror attacks wherever they reside using whatever methods they have at their disposal. From truck ramming attacks to knife attacks to homemade bombs, ISIS encourages its followers to use everyday items to inflict terror in their local communities. *See* "ISIS Urges More Attacks on Western 'Disbelievers,'" at https://www.independent.co.uk/news/world/middle-east/isis-urges-more-attacks-western-disbelievers-9749512.html (ISIS spokesperson told supporters, "If you can kill a disbelieving American or European . . . or any other disbeliever from the disbelievers waging war, including the citizens of the countries that entered into a coalition against the Islamic State, then rely upon Allah, and kill

him in any manner or way . . . Smash his head with a rock, or slaughter him with a knife, or run him over with your car, or throw him down from a high place, or choke him, or poison him.") (last visited on April 22, 2021). Musaibli's release poses this type of danger to the community. He should not be released pending trial.

Moreover, there is no evidence that Musaibli has given up his radical views. During jail calls with this family since his incarceration on this case, Musaibli said "I hate the English language and will not praise the United States." In a subsequent call, Musaibli expresses that he wants to be imprisoned in an Arab country rather than "this infidel country." Finally, over a discovery issue, Musaibli claimed that "as soon as he is out he will kill [his] attorney."

## IV
## CONCLUSION

For the reasons listed above, Musaibli should remain detained pending trial.

Respectfully submitted,

SAIMA S. MOHSIN
Acting United States Attorney

s/*Kevin M. Mulcahy*
Kevin Mulcahy
Hank Moon
Assistant United States Attorneys
211 W. Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9713
Kevin.Mulcahy@usdoj.gov

Date: April 22, 2021

## Certificate of Service

I hereby certify that on April 22, 2021, I electronically filed the Response for the United States with the Clerk of the Court of the Eastern District of Michigan using the ECF system, which will send notification of such filing to all counsel of record via electronic mail.

                                          s/*Kevin M. Mulcahy*
                                          Kevin M. Mulcahy
                                          Assistant United States Attorney
                                          211 W. Fort Street, Suite 2001
                                          Detroit, MI 48226
                                          (313) 226-9713
                                          Kevin.Mulcahy@usdoj.gov