**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

        Plaintiff,

vs                                      Case No.   18-cr-20495
                                      HONORABLE DAVID M. LAWSON

IBRAHEEM IZZY MUSAIBLI,

        Defendant.
_____/

**REPLY TO GOVERNMENT'S RESPONSE IN OPPOSITION TO**
**DEFENDANT'S MOTION TO MODIFY BOND AND PERMIT PRETRIAL RELEASE**

      In response to Defendant's *Motion to Modify Bond and Permit Pretrial Release* (ECF No. 133), the Government essentially says that (1) Mr. Musaibli is charged with serious offenses and did bad things in connection with them (i.e. he is dangerous), and (2) he does not like the culture of the United States compared to traditional Muslim culture in the Middle East (i.e. he is a flight risk).  In reply, the defense says that the Government's showing of dangerousness does not meet the "clear and convincing evidence" threshold required for Mr. Musaibli to be held on that ground, and his criticism of the United States and aspects of its culture do not show even by a preponderance of the evidence that he is a flight risk.  The Court and its enforcement arms have ample power and authority to condition Mr. Musaibli's release and monitor his behavior and location in mitigation of the Government's concerns.  Release under appropriate conditions also addresses the serious adverse effects that continued pretrial incarceration in the Livingston County Jail imposes.

**DANGEROUSNESS IS NOT SHOWN BY CLEAR/CONVINCING EVIDENCE**

Mr. Musaibli denies joining ISIS.  He has denied it from the moment when the FBI first challenged him with its assertion that he had so joined.  The Government takes him to task for not accepting the FBI's offer to remove him from ISIS-held territory.  However, their Response omits mention of the fact that the FBI's offer of assistance at its inception was conditioned on Mr. Musaibli acknowledging that he was an ISIS member, which he wouldn't give (and, later, Task Force Agent Kerner's clear intimation that Mr. Musaibli would be brought back to the United States to face charges ).[1]

The Government points to statements to the contrary made by Mr. Musaibli to his family.  Regarding these conversations, Mr. Musaibli explained to the FBI that ISIS was monitoring communications of those within its territory and that he had to play a role as a loyal supporter to stay safe.  The Government also claims, quite specifically and categorically, that Mr. Musaibli fought coalition forces in Hit, Iraq.  The defense has not been provided with anything that persuasively demonstrates Mr. Musaibli's participation in hostilities in Hit, and Mr. Musaibli just as categorically denies this as well.  Finally, with respect to his alleged ISIS activities, the Government claims that Mr. Musaibli was complicit in efforts to recruit two British teens to ISIS.  However, while the Government claims Mr. Musaibli was named as a contact person for the teens by the

---

[1] This is perhaps the most salient issue in connection with the defense motions to suppress Mr. Musaibli's statements given during FBI interrogations.

2

person recruiting them, discovery on this claim has not been provided in an accessible format.  Further, at best it is second-hand hearsay that may not be true or relate to any action or knowledge of Mr. Musaibli.

More tangentially, the Government points to Mr. Musaibli joining other Yemeni students during 2013-2014 in resisting Yemeni Houthi attacks on a school he attended there.  The Government suggests this is an example of Mr. Musaibli's radicalization, supporting its theory that Mr. Musaibli later joined ISIS out of Islamic fervor.  A more reasonable observation would be that this was understandable self-defense.

The Government also cites to LCJ calls between Mr. Musaibli and his family, obviously after his escape from ISIS territory. These calls allegedly are of Mr. Musaibli criticizing the United States and its culture, and his antipathy to both.  The defense has asked for transcripts of these calls, to assess the Government's translations and characterizations of them and their full context, but has not received that information. However, even if the statements were made and properly characterized by the Government, they do not demonstrate that Mr. Musaibli would act violently if released, let alone by clear and convincing evidence.  Such views certainly are represented by other disaffected persons and societies in the United States, particularly those enmeshed in the criminal justice system, and the Courts do not consider them too dangerous to release on bond merely for that reason.

Finally, at the very end of their Response, the Government references an alleged statement by Mr. Musaibli that, if released, he would "kill [his] attorney." In reply, again counsel do not have a transcript of this conversation (made 11 months ago) and cannot comment on its accuracy or context. However, Mr. Musaibli has been locked up for almost three years; his frustration is understandable, and defense attorneys routinely deal with clients directing their frustrations at them. Undersigned counsel are confident that, at worst, the call reflects this frustration and they do not take his words literally. Viewed realistically, Mr. Musaibli's intemperate remarks along these lines, if in fact they were as described, are not a sign of dangerousness.

In sum, the Government has not show by clear and convincing evidence that Mr. Musaibli is a danger to the rest of us if he is released prior to trial.

**SIGNIFICANT RISK OF FLIGHT IS NOT DEMONSTRATED BY A PREPONDERANCE OF EVIDENCE**

It is undisputed that Mr. Musaibli has ties to Yemen and has expressed a willingness to live there, both before his arrest and since. However, that does not make him a flight risk. Many facing serious charges might be willing, even anxious, to live elsewhere, but still show up to court. Equally if not more important, the Government and its surveillance functions are uniquely equipped to monitor a subject's locations. Add to all of this the fact that Mr. Musaibli does not even have a passport and the conclusion to be drawn should

4

be that conditions of release can be imposed to address potential flight. A GPS tether would be an obvious first step.

### **PRETRIAL INCARCERATION IS DOING DEFENDANT REAL HARM**

The Government minimizes the defense concerns about Mr. Musaibli's ongoing detention, describing them as "his displeasure with the Livingston County Jail." [ECF No. 136, PageID. 1196.] Mr. Musaibli has been detained since he turned himself in to SDF forces approximately in June 2018. He was confined in isolation for a substantial time during his detention at the FCI Milan facilities. And for much of the past year, he has been confined in isolation at his current facility. (It was all but 1-2 hours/day until recently, when the defense understands Mr. Musaibli has been permitted a few additional hours out of his cell each day.) As described in its *Motion*, these conditions of isolation are damaging Mr. Musaibli, as they would anyone. Given the availability of adequate conditions to secure his appearance and proper behavior pending trial if released, Mr. Musaibli should not be required to endure the serious adverse impacts of prolonged isolation as he presently experiences.

### **CONCLUSION**

The Government has not carried its burden to show that no reasonable conditions will guaranty Defendant Ibraheem Izzy Musaibli's appearance in court and behave accordingly in the meantime. Therefore, the defense requests that the Court reconsider the existing Consent Order of Detention, and enter an

order of pretrial release with such conditions as the Court deems necessary and appropriate.

Dated:  May 5, 2021                           s/John A. Shea
                                              John A. Shea (P37634)
                                              Attorney for Defendant
                                              120 N. Fourth Avenue
                                              Ann Arbor, Michigan 48104
                                              (734) 995-4646
                                              jashea@earthlink.net


                                              James R. Gerometta
                                              Fabián Rentería Franco
                                              Attorneys for Defendant
                                              Federal Community Defender
                                              613 Abbott St., Suite 500
                                              Detroit, Michigan 48226
                                              (313) 967-5542
                                              james_gerometta@fd.org
                                              fabian_renteria-
                                                    franco@fd.org

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that, on May 5, 2021, he electronically filed Defendant's *Reply to Government's Response in Opposition to Defendant's Motion to Modify Bond and Permit Pretrial Release*. Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

Dated: May 5, 2021

s/John A. Shea
John A. Shea (P37634)
Attorney for Defendant
120 N. Fourth Avenue
Ann Arbor, Michigan 48104
(734) 995-4646
jashea@earthlink.net