UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

                        Plaintiff,           Case No. 18-20495

       v.

                                      Hon. David M. Lawson

Ibraheem Izzy Musaibli,

                        Defendant.

_____/

**<u>Defendant's Response to Government's Motion to Admit Documents [R. 102]</u>**

I.

Background.

The Government has moved to admit a number of documents recovered in Syria and Iraq that it believes are records of the Islamic State (ISIS). These documents, as identified by the Government, include: (1) a brigade roster recovered in February 2017; (2) payroll records recovered in June 2017 in electronic form; (3) a treasury administration report recovered in December 2017 in electronic form; (4) hospital records; and (5) other ISIS documents that do not specifically mention Mr. Musaibli.

The Government has identified four witnesses it intends to call to authenticate the documents. Three of the witnesses have no first-hand knowledge of how ISIS collects, stores, and records information. These individuals have simply reviewed a number of documents they believe to be genuine ISIS records and can testify to the similarities between these documents and the other documents they have reviewed. The fourth witness whom the Government has identified to authenticate the records is a cooperating witnesses who claims to have once maintained a set of records for ISIS.[1]

---

[1] On June 3, 2021, the Government indicated it would call eight witnesses to authenticate the documents at issue. Defense has requested identities of these

The Government premises the admissibility of the documents on ISIS's extensive record keeping, which was done to give the organization the illusion of being a functional state.  While ISIS maintained numerous records, they were by no means an organized state or entity.  The Government's cooperating witness will testify that there were no standards involved in the record keeping, that record keepers were given no training or instruction, and that records were often out of date and in need of updating and correction.  Even taking the evidence in the light most favorable to the Government, these irregular records, found after Mr. Musaibli attempted to flee ISIS and after he became a civilian living under ISIS rule, cannot satisfy the hearsay requirements for either coconspirator statements or business records and do not have any indicia of reliability necessary for admission under the residual exception.

II.

Authentication as Required by Federal Rule of Evidence 901(a).

A proponent of proffered evidence must make the *prima facie* case that a document is what that proponent claims it to be.  In this case, the Government must produce evidence demonstrating that the documents at issue are genuine ISIS

witnesses, but the Government has not yet provided the information relating to the additional witnesses.

3

administrative documents.  For the majority of documents at issue, the Government will be unable to do this at the evidentiary hearing because they cannot provide persuasive testimony for authentication under Federal Rule of Evidence 901(a).

The Government attempts to authenticate the documents based on the testimony of a *witnesses with knowledge.*  Fed. R. of Evid. 901(b)(1).  The advisory committee notes to this subsection make it clear that the drafters intended a witness with knowledge to be a fact witness who could attest to the authenticity of the evidence.  The examples given include a witness who was present when a document was signed, or a witness who could establish chain of custody from the seizure of narcotics from a defendant.

In this case, with the exception of the cooperating witness, the witnesses identified by the Government lack first-hand knowledge of the creation and chain of custody of the documents.  They cannot tell how they were made and if they have been altered in any way.  Even the cooperating witness is unable to identify the majority of documents the Government seeks to admit.  At best, like the other witnesses, he can say that they look like ISIS documents but that he is unfamiliar with their creation.  There is one document the Government alleges is a printout for the database the cooperating witness maintained, but even for this document he can only say that it looks like the kind of form he would print off his database.

In *Griffin v. Bell*, the Seventh Circuit explained that a person with knowledge is an individual who can attest to how a piece of evidence was produced. In *Griffin*, the court excluded video evidence of a student altercation with a security guard despite that student's attempt to authenticate the video and still shots taken from that video as accurately depicting the event. The video had been sent to the student by a classmate. The Court ruled that the student was not a witness with knowledge because he not testify to how the video was taken and if it was altered. 698 F.3d 817, 826-27 (7th Cir. 2012). The Government's proffered witnesses can provide even less testimony that the student in *Griffin*. While the authenticating witness in *Griffin* had first-hand knowledge of the incident captured on video, the Government witnesses cannot attest to the underlying accuracy of the records, how they were made, who in ISIS is alleged to have made the records, or the integrity of the documents between their creation and their presentation in court.

The Government also attempts to rely on Federal Rule of Evidence 901(b)(4), "the distinctive characteristics and the like" of the documents, including the circumstances of their recovery. Regarding the circumstances of the recovery, the Government relies on a number of cases, all of which involve the seizure of documents from a defendant's office (*United States v. Crosgrove*, 637 F.3d 646 (6th Cir. 2011)), campsite (*United States v. Harvey,* 117F.3d 1044 (7th Cir. 1997)), or home (*United States v. Acre*, 997 F.2d 1123 (5th Cir. 1993) and *United States v.*

*Helmel*, 769 F.2d 1306 (8th Cir. 1985)).  At the hearing the Government will not be able to establish that the documents were found in locations that would bolster their authenticity.  Because of past problems with false or fraudulent ISIS documents, the simple fact the documents were seized in or around ISIS territory is insufficient.

The fact that multiple documents appear to contain information consistent with identifying information of Mr. Musaibli is again not sufficient to satisfy the Government's requirement to authenticate these documents as unaltered authentic ISIS documents.  In *United States v. Mitts*, the Sixth Circuit held that an alleged advertisement for the defendant's business that contained his name, telephone number, and address should not have been admitted to trial because anyone could have gathered that information and created a flier.   396 Fed. Appx. 296, 302 (6th Cir. 2010 unpublished).

The Government also relies on the fact that the documents contained ISIS marks or letter head.   This is not the sort of distinguishing characteristic contemplated by the rules of evidence.  The advisory committee notes explain that distinctive characteristics relate to the substantive internal contents of the documents at issue.  For example, "a document or telephone conversation may be shown to have emanated from a particular person by virtue of its disclosing knowledge of facts known peculiarly to him . . . similarly, a letter may be authenticated by content and circumstances indicating it was in reply to a duly authenticated one."  Fed. R. of

Evid. 901, Advisory Committee Notes, 1972 Proposed Rules, Notes to Subdivision (b), Example (4) (internal citations omitted).

The marks, stamps, or letterhead identified by the Government are easily falsified and insufficient to authenticate the documents under 901(b)(4). The problem for the Government in authenticating these documents is that there are no known accurate and authenticated documents to compare against the contested documents. There is no way of knowing if the documents that the Government claims to be accurate ISIS records were actually created by ISIS and that they have remained accurate and unaltered prior to their admission into evidence. The danger of accepting alleged ISIS documents as real without thorough vetting is real and is illustrated by the recent problems experienced by the New York Times caused by their failure to properly authenticate alleged ISIS documents they relied upon in reporting. See Smith, Sydney. "NYT Editor's Note: ISIS Documents May not Be Real." *iMediaEthics.* (November 18, 2019). https://perma.cc/8KNQ-883G.

### III.

### Hearsay Issues.

a.  Co-conspirator statements and the application of Rule 801(d)(2)(E).

The Government alleges that the ISIS documents are non-hearsay admissions under Federal Rule of Evidence 801(d)(2)(E), the rule governing co-conspirator statements. In the Sixth Circuit, statements from co-conspirators are admissible if

the Government can show by a preponderance of the evidence "(1) that a conspiracy existed, (2) that the defendant against whom the hearsay is offered was a member of the conspiracy, (3) that the statement was made during the course of the conspiracy, and (4) that the statement was made in furtherance of the conspiracy." *United States v. McLernon*, 746 F.2d 1098, 1105 (6th Cir. 1984).

Courts have held that statements made after a conspirator has withdrawn effectively are not admissible under the hearsay exception. *United States v. Nerlinger*, 862 F.2d 967, 974 (2d Cir. 1988). (holding that, under Fed. R. Evid. 801(d)(2)(E), a hearsay statement from a coconspirator is admissible, but that "[a]s the language of the rule indicates, once a party withdraws from a conspiracy subsequent statements by a coconspirator do not fall within this exception."); *See also*, *United States v. Lebedev*, 932 F.3d 40, 51 (2d. Cir. 2019) (holding that "[o]nce a party withdraws from a conspiracy subsequent statements by a co-conspirator do not fall within the [hearsay rule] exception).

Mr. Musaibli has already addressed the issues of the existence of the conspiracy and his membership in his Motion Regarding Admissibility of Co-Conspirator Statements. ECF No. 105, PageID 368.  The Court denied that motion without prejudice and stated on the record that it was to be renewed after the hearing on this motion when the Government had more specifically identified which statements and documents it planned to introduce.

The Court should similarly reserve ruling on the issue of the admission of the statements as co-conspirator statements *made during the course of the conspiracy*. While Mr. Musaibli intends to challenge the Government's allegation that he ever knowingly and willingly joined a conspiracy to support ISIS, even taking the evidence in the light most favorable to the Government, the evidence will show that Mr. Musaibli was able to leave ISIS, but not ISIS territory, in late 2016 or early 2017. The documents the Government intends to introduce were recovered in 2017. Without more information, the Government cannot establish that statements were made during Mr. Musaibli's time, whether voluntary or not, with ISIS.

b. <u>Lack of personal knowledge in non-hearsay statements and Rule 403.</u>

The Federal Rules of Evidence do not require personal knowledge for the admission of non-hearsay statements under Rule 801(d). *Weinstein v. Siemens*, 756 F.Supp.2d 839, 853–54 (E.D. Mich. 2010). However, this approach has been criticized for allowing gossip, rumor, and other statements wholly lacking in credibility or foundation into evidence. 4 Weinstein's Evidence ¶ 801(d)(2)(C)[01] at 801-278–801-279 (1990). To counter the, at times, overly permissive admissibility rules relating to non-hearsay statements under Rule 801(d), courts have relied upon the gate-keeping function of Fed. R. of Evid. 403.

In *Mister v. Northeast Illinois Commuter R.R. Corp*, the Seventh Circuit upheld the exclusion of a proper non-hearsay admission of a party opponent (801(d)(2)(D)) under 403:

> Fed.R.Evid. 403 requires that a district court determine whether the prejudicial effect of admitting such evidence outweighs its probative value and thereby renders it inadmissible. *Aliotta,* 315 F.3d at 763. What we have here is a non-hearsay report that is derived from multiple levels of hearsay. Although the report stated that a similar fall occurred in the "same spot," no one knew what spot. No one knew exactly where Wyman had fallen and there is absolutely no basis to conclude that Mister slipped and fell in the same location as Wyman. Although it would have been proper to admit the report and allow Metra to expose the statement's unreliability on cross-examination, it was not improper to find the report unreliable based on the multiple levels of hearsay and lack of precise factual statements

571 F.3d 696, 699 (7th Cir. 2009).

Like the accident report at issue in *Mister*, the records and reports here rely on multiple levels of hearsay from unknown persons. Importantly, ISIS had no measures for insuring reliability and accuracy of its recordkeeping. This Court should exercise its discretion under Rule 403 and decline to admit the documents.

c. Rule 803(6)'s hearsay exception for records of regularly conducted activity.

The Government seeks to admit the ISIS documents under the hearsay exception for regularly conducted activity. The Government's brief addresses only the fact that the foundation for the exception can be made by an outsider familiar with the record keeping activities of an organization and does not require the

custodian or creator of the records to lay the foundation for admission. The Government's brief does not address how its witnesses will lay a foundation for the exception. "[T]o be a qualified witness the government agent must still explain the record keeping system and vouch that the requirements of the rule have been met." *United States CFTC v. Dizona*, 594 F.3d 408, 416 fn 6 (5th Cir. 2010).

The exception for regularly conducted activity requires the proponent of the evidence prove:

> (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>
> (C) making the record was a regular practice of that activity;
>
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
>
> (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. of Evid. 803(6).

The hearsay exception for regularly conducted activity was initially known as the business record exception.  Business records were an exception to the hearsay rule because of their inherent reliability.   "The element of unusual reliability of business records is said variously to be supplied by systematic checking, by regularity and continuity which produce habits of precision, by actual experience of business in relying upon them, or by a duty to make an accurate record as part of a continuing job or occupation."  Fed. R. of Evid. 803, Advisory Committee Notes, Exception 6, (Citing McCormick on Evidence §§ 281, 286, 287; Laughlin, Business Entries and the Like, 46 Iowa, L.Rev. 276 (1961)).  The reliability of records is checked by 803(6)(A)'s requirement that they be created by or based on the timely information of *someone with knowledge*, and 803(6)(B) and (C)'s requirements that the activity be *regular*.

Courts have ruled that *someone with knowledge* as required by 803(6)(A) means an individual with first-hand knowledge of the facts recorded.  When information in records is supplied by unknown persons and/or at unknown times, the records cannot meet the requirement that they be produced near in time to the recorded event and by someone with knowledge.  *See e.g. United States v. Houser*, 746 F.2d 55 (U.S. App. D.C. 1984) (Bureau of Alcohol Tobacco and Firearms trace forms not admissible as business records because the information was provided over the phone from unknown employees and not near the time of manufacturing);

*Dizona*, 594 F.3d at 416 (spreadsheet of trades introduced through a federal agent was inadmissible when that agent did not determine who entered the information into the spreadsheet, if they had knowledge of the trades, or when the information was entered); *Abascal v. Fleckenstein* 820 F.3d 561, 565 (2d Cir. 2016), (prison monitoring report improperly admitted because of a failure to verify that the incidents in the report occurred at or near the time the data was collected to be considered contemporaneous. "Timeliness is essential because 'any trustworthy habit of making regular business records will ordinarily involve the making of the record contemporaneously.'" (quoting *United States v. Strother*, 49 F.3d 869, 876 (2d Cir. 1995));  and *United States v. Atlas Lederer Co*, 282 F. Supp. 2d 687, 697 (S.D. Ohio 2001) (customer price lists and invoices not admissible based on the owner/operator's statements that the documents were "kept in the ordinary course of business" and that he was "familiar with all aspects" of the business; the fact that a witness has personal knowledge of the business does not establish that the documents were made by a person with knowledge).  Because the author of these documents is unknown, as is the timing of their authorship and the source of the author's information, and ISIS had no regular institutionalized procedure for record keeping, the Government cannot show either that the record was made by someone with first-hand knowledge or that it was made at or near the time the recorded event occurred.

In addition to the knowledge and timeliness requirement, the rule requires regularity.  Not every record kept in the course of activity is exempt for the hearsay rules.  The record must be the kind of systematic and regularly checked information that would lead to errors or misrepresentations being regularly detected.  *Solomon v. Shuell*, 435 Mich 104; 457 NW2d 669 (1990) (discussing Michigan Rule of Evidence 803(6)).  This principle is embodied in the requirement that both the record keeping and events recorded be regularly conducted.  *Palmer v. Hoffman*, 318 U.S. 109; 63 S.Ct. 477 (1943) (railroad accident reports not made in the regular course of conducting railroad business and not applicable as business records).

The Government can offer no evidence of the regularity of the records kept by ISIS.  In fact, the cooperating witness will testify about the lack of conformity and accuracy he encountered in ISIS record keeping.  With no requirement that he records be regularly updated and no procedure to do so, these records are not the type of record in which errors or misrepresentations would be regularly detected.  In fact, the witness testimony will establish the opposite: that the records were known to be inaccurate and ISIS leadership based their actions, in part, on the knowledge the records were not accurate.  Because the records lack any regularity that would establish reliability, they should not be admitted.

III.

<u>The Hit Battle Report and Medical Records</u>

Mr. Musaibli is reserving most specific objections of relevance and prejudice until trial because those issues are necessarily litigated in the context of the evidence admitted at trial. However, there are two narrow sets of records that, in addition to objections discussed above, the defense has identified as presenting threshold issues relating to relevance under Rule 401 and unfair prejudice under Rule 403. The Government intends to introduce what it believes to be a post-battle report detailing ISIS' defeat in Hit and alleged medical records from ISIS.

The Hit report contains a reference to a partial kunya or *nom de guerre* attributed to Mr. Musaibli by the Government. This name Abd al-Rahman means "servant of the most gracious" and is a common Arabic surname and common kunya. See e.g. Abd al-Rahman Wikipedia Entry. https://perma.cc/6E4T-L6KV. In this report Abd al-Rahman is referenced as a deputy to the commander of the unit defending Hit.

The report contains no reference to Mr. Musaibli specifically, nor does it otherwise tie the "Abd al-Rahman" surname to Mr. Musaibli specifically as opposed to the numerous other persons who utilized that surname. Therefore, it adds nothing to the Government's case, except to allow the jury to speculate that THIS "Abd al-Rahman" could be Mr. Musaibli and to further speculate that he may have had some

rank within ISIS.  In that regard, the evidence fails the test of basic relevance under Rule 401.

Furthermore, admission of this evidence would be materially misleading, and therefore unduly prejudicial under Rule 403. Taken in the light most favorable to the Government, Mr. Musaibli was, at best, an ineffective and problematic soldier.  For instance, if the documents which the Government seeks to admit indeed are authentic, Mr. Musaibli was reprimanded twice for leaving the battlefield.  In numerous interviews of admitted ISIS fighters, Mr. Musaibli is described as someone who lived in mosques and "sold Pepsi."  He was thought to be a potential spy for the American coalition forces and argued against ISIS doctrine.  The defense has seen no information in the discovery that remotely suggests Mr. Musaibli had any position of responsibility in ISIS generally, let alone on a battlefield, except for the proffered Hit battle report; in fact, the balance of the evidence is to the contrary.[2]

The medical records contain the full kunya attributed to Mr. Musaibli, Abu 'Abd-al-Rahman al-Yemeni.  However, this full kunya is simply the common al-Rahman kunya followed by the tag, of or from Yemen.  Given how common the name and kunya al-Rahman are it is likely there were several persons using that

---

[2] The Hit battle report is also especially problematic as a record of regularly conducted activity. It was a report prepared and designed to assign blame for the military loss at Hit.  Like the railroad accident report in *Palmer,* reports prepared to analyze singular events are not reports of regular activity.  318 U.S. 109, 113-114; 63 S.Ct. 477, 480-481 (1943).

kunya from Yemen.  Using these documents to link Mr. Musaibli to ISIS is as if the Government found a Joseph Smith record in the United States and attempted to link it to a specific person named Joseph Smith without more information, such as a social security number or date of birth. As with the Hit report, these records have too speculative a connection to Mr. Musaibli to be relevant under Rule 401, and in addition lack sufficient probative value to outweigh their potential undue prejudice and so are inadmissible under Rule 403 as well.

IV.

Conclusion

For the reasons discussed above, Defendant asks that the Court deny the

Government's motion to admit the proffered documents

Submitted,

s/James R. Gerometta
James R. Gerometta
Fabián Rentería Franco
Counsel for Ibraheem I. Musaibli
FEDERAL COMMUNITY DEFENDER
613 Abbott Street, Suite 500
Detroit, Michigan 48226
Email: james_gerometta@fd.org
Phone: 313.967.5542

John A. Shea (P37634)
Counsel for Ibraheem I. Musaibli
120 N. Fourth Avenue
Ann Arbor, Michigan 48104
Phone: 734.995.4646
Dated: June 14, 2021            Email: jashea@earthlink.net

18

## Certificate of Service

I certify that on June 14, 2021, I filed

**Defendant's Response to Government's Motion to Admit ISIS Documents [R. 102]**

through the court's docketing system, which should send notification to opposing counsel of record.

/s/ James R. Gerometta