United States v. Musaibli

# DECLARATION OF CHRISTOPHER CHANG

I, Christopher Chang, declare as follows:

1. I am the founder and owner of 255 Research and Investigation Ltd. that is based in London, United Kingdom. 255 Research and Investigation focuses on criminal defense investigation and investigation training, with a specialization on international matters.

2. I have extensive experience working on investigations for criminal cases (both fact and mitigation investigation) across the world that also includes substantial experience in regions within Arab and North African countries. In cases within regions in Arab countries, I often work with associates to obtain records, contact and interview witnesses, have them serve as translators and/or interpreters, and to assist in other ways. Based on my experience, I also assist legal teams in understanding cultural, regional, and political issues of said regions.

3. I work with legal teams in the United States of America on both capital and non-capital cases, which includes federal cases.

4. Defense counsel representing Ibraheem Izzy Musaibli in the matter of United States of America v. Ibraheem Izzy Musaibli (Case Number 18-20495, Eastern District of Michigan) consulted with me beginning in October 2020. This initial consultation resulted in my retention in March

United States v. Musaibli

2021 as an expert in investigation development, and investigation work in September 2021.

5. After consulting with the defense team, potential witnesses were identified as critical to Mr. Musaibli's case. I was charged with locating in Syria and Iraq the identified witnesses and, if possible, interview them. Those witnesses are Ayman Muhammad Marwan, Ashraf Mahmud Islam, Abebe Oboi Ferrera, Atiba Joel Grant, and Ali Usamah Ali. A number of these witnesses were identified as detained in Syrian detention facilities.

6. I am aware of the difficulties that field investigation and issues of access poses in countries such as Syria and Iraq from previous work on other cases and projects. It may take weeks or months to obtain authorization and access to local regions, including detention facilities likes prisons. To date, we made multiple attempts to obtain access to the regions to interview the identified witnesses with no success for various reasons.

7. Field investigation challenges have increased substantively in the two years or so since the COVID-19 pandemic began. The effectiveness of my work is heavily dependent on myself, team members, and partners being able to travel to conduct investigation across the world. The standards for witness interviews require face-to-face, in-person interviews. Detention facility visitation and COVID-19 prevention policies and exposure risk may bar

United States v. Musaibli

standard-compliant investigations. As a result of the adherence to these standards, COVID-19 travel restrictions also impedes vital case-related field investigation.

8. Interviews with Syria-based witnesses held in Syria require an assessment of both the security and current national health risks. The U.S. State Department and the United Kingdom Foreign Commonwealth Office currently advise to not travel to Syria because of volitivity and danger as a result of conflict and insecurity, in addition to COVID-19 exposure risks and lack of healthcare access in case of a medical emergency. Iraq poses the same investigation barriers and similar travel notices are in effect by the U.S. State Department and the United Kingdom Foreign Commonwealth Office.

9. There are limited access points into Syria. Working with team members and local contacts, we ascertained that entry and accessing detainees would require authorization from the Autonomous Administration of North and East Syria. Authorization at the highest possible level is needed to ensure detainee/prisoner access. Several of the identified witnesses are held in medium- to high-security detention facilities that can only be accessed through diplomatic channels and with authorization by the current force in control of the region. Authorization into Syria for legal teams or

United States v. Musaibli

investigators is practically nonexistent at this moment, though journalists and media representatives have received some limited access.

10. To obtain access into Syria for this case, my team made multiple efforts. For example, we corresponded with the Autonomous Administration of North and East Syria representatives in Syria and Europe regarding access to the region. We then communicated directly with the Department of Foreign Relations of North and East Syria regarding our request for access into the region. The Department of Foreign Relations denied us entry because the border is closed as a result of the spread of COVID-19 and unspecified security reasons. We made follow-up inquiries to no avail. Also, based on current local knowledge from on-the-ground contacts, the relevant offices and administrators with power to authorize access are not reachable. There remains elevated security and health risks that are not manageable and puts my contacts and team at risk. Entry into Syria without official authorization from the Autonomous Administration of North and East Syria is not a viable option.

11. Recent border closings into Syria have further hampered investigation work in this case. In particular, the Syrian Defence Force and groups from the Kurdish Region of Iraq are in conflict, thus closing key

Ex 1

United States v. Musaibli

access points to major towns in Syria. Our local contacts state that there is no entry at present.

12.  Our investigation work in Iraq faces similar challenges in locating and a facilitating a possible interview with an identified witness. Iraq presents significant security concerns and COVID-19 health concerns that prevent on-the-ground best practices to locate witnesses.

13.  The effect of the COVID-19 pandemic and the security risks have individually and cumulatively contributed to the lack of access into Syria and Iraq. Moreover, without the proper authorization, my team cannot locate and interview in Syria the identified witnesses in Mr. Musaibli's case.

The foregoing is true and correct and executed under penalty of perjury under the laws of the United States of America on December 29, 2021.

_____
Christopher Chang

Ex 1