UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
_____

UNITED STATES OF AMERICA,

        Plaintiff,

        v.

IBRAHEEM IZZY MUSAIBLI,

        Defendant.

Case No.  18-20495

HON. DAVID M. LAWSON

_____

**UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO REQUIRE AUTHENTICATION OF SOCIAL MEDIA MESSAGES AND EMAIL EVIDENCE OUTSIDE THE PRESENCE OF THE JURY (201)**
_____

Ibraheem Musaibli joined the terrorist organization ISIS in late 2015. Prior to joining the Islamic State, Musaibli communicated through email with religious scholars about whether he should join ISIS. After making the journey to join the terrorist group, Musaibli communicated frequently with friends and family members using a variety of social media applications, including Facebook. At trial, the government intends to offer Musaibli's statements over Facebook and his pre-travel email communications as evidence in its case in chief.

Musaibli requests a hearing outside of the presence of the jury to establish the authenticity of the messages. But such a hearing is unnecessarily time-consuming. The same testimony that would establish Musaibli's ties to these accounts would

need to be offered before the jury for context, weight, and reliability of the messages. Moreover, the testimony establishing authenticity of the messages would not be prejudicial to Musaibli. Once the Court heard this testimony—the contours of which are provided in more detail below—it could allow or disallow the more substantive, incriminating messages depending on its ruling as to the authenticity of the messages. Because Musaibli would suffer no prejudice and a pretrial hearing without the jury would be unnecessary, the Court should deny the motion.

# I
# RELEVANT FACTUAL AND PROCEDURAL HISTORY

In July 2016, Ibraheem Musaibli had an email message sent to the United States government. That email message contained several attachments, including a photograph of Musaibli with an AK-47 style rifle behind him. The email and its other attachments suggested that Musaibli was in Iraq with ISIS. The email launched an investigation into Musaibli by the FBI in Detroit. Among the first steps to this investigation was an interview with Musaibli's family. Musaibli's family confirmed that Musaibli joined ISIS and was living in the Islamic State. The family told the FBI it had been communicating with Musaibli via the social media platform Facebook and the text messaging application WhatsApp. The family even provided the FBI with screenshots of the Facebook page it said belonged to Musaibli. Musaibli later used several other Facebook pages while with the Islamic State. Moreover, the

2

FBI's investigation identified three different email accounts used by Musaibli while he was in the United States and Yemen prior to his travel to Syria and Iraq.

At trial, the government intends to offer evidence from the various Facebook pages and email accounts that belonged to Musaibli. Each account contains details revealing Musaibli as its user, as explained in more detail below.

### A. The Facebook Pages

Musaibli's family provided the FBI with a screenshot of Musaibli's primary Facebook page, which used the moniker "Abu Shifa al-Musaibli." Abu Shifa translates to "father of Shifa." Musaibli's eldest child is named Shifa. The FBI eventually obtained a federal search warrant for the contents of that Facebook account, which is littered with evidence that the account belonged to Defendant.

First, the friend list for the account contains several 'Musaiblis,' suggesting the user is a Musaibli who has connected with several family members. Included in that friend list were Musaibli's mother, father, and siblings. Facebook also provided terms/people searched by the Abu Shifa account user, which again included many individuals with the last name Musaibli, including members of his immediate family.

Second, within the messages between the Abu Shifa account and others, the author repeatedly and consistently identifies himself as "Ibraheem," "Izzy's son," "from America," or some variation of those identifiers. Here are just a few examples:

3

**Recipients** (ابو شفاء المسيبلي 100011897312465)     Abu Shifa al-Musaibli
(مجدي سالم المسيبلي 100003597302269)     Majdi Salim al-Musaibli
**Author** (مجدي سالم المسيبلي 100003597302269)     Majdi Salim al-Musaibli
**Sent** 2016-05-15 15:01:13 UTC
**Deleted** false
**Body:** Are you Ibrahim? Izzy's son?

**Recipients** (مجدي سالم المسيبلي 100003597302269)     Majdi Salim al-Musaibli
(ابو شفاء المسيبلي 100011897312465)     Abu Shifa al-Musaibli
**Author** (ابو شفاء المسيبلي 100011897312465)     Abu Shifa al-Musaibli
**Sent** 2016-05-15 15:36:11 UTC
**IP** 185.12.24.250
**Deleted** false
**Body** Yes.

**Recipients** (ابو شفاء المسيبلي 100011897312465)     Abu Shifa al-Musaibli
(فيصل محمد المسيبلي 100002164880448)     Faisal Muhammad al-Musaibli
**Author** (فيصل محمد المسيبلي 100002164880448)     Faisal Muhammad al-Musaibli
**Sent** 2016-07-06 21:23:36 UTC
**Deleted** false
**Body** Who is this?

**Recipients** (فيصل محمد المسيبلي 100002164880448)     Faisal Muhammad al-Musaibli
(ابو شفاء المسيبلي 100011897312465)     Abu Shifa al-Musaibli
**Author** (ابو شفاء المسيبلي 100011897312465)     Abu Shifa al-Musaibli
**Sent** 2016-07-06 21:25:18 UTC
**Deleted** false
**Body** To both of us Ibraheem

**Recipients** (حسن المسيبلي 100010713818230)     Hassan al-Musaibli
(ابو شفاء المسيبلي 100011897312465)     Abu Shifa al-Musaibli
**Author** (ابو شفاء المسيبلي 100011897312465)     Abu Shifa al-Musaibli
**Sent** 2016-07-07 19:35:17 UTC
**Deleted** false
**Body** I am the son of Izzy from America.

```
Recipients (100010713818230) حسن المسيبلي           Hassan al-Musaibli
           (100011897312465) ابو شفاء المسيبلي       Abu Shifa al-Musaibli
    Author (100011897312465) ابو شفاء المسيبلي       Abu Shifa al-Musaibli
      Sent 2016-07-07 19:35:56 UTC
   Deleted false
      Body I was born in America; my family is from Yemen
```

In other posts, the Abu Shifa user provided a WhatsApp number that Musaibli's family identified as belonging to him:

```
Recipients (100001457846942) احمد المسيبلي           Ahmad al-Musaibli
           (100011897312465) ابو شفاء المسيبلي       Abu Shifa al-Musaibli
    Author (100011897312465) ابو شفاء المسيبلي       Abu Shifa al-Musaibli
      Sent 2016-04-19 11:03:44 UTC
        IP 185.19.82.230
   Deleted false
      Body Peace be upon you and God's mercy and His blessings.
           How are you? Register me on WhatsApp. WhatsApp
                                              +63 908 033 0729.
           This is Ibraheem
```

Importantly, the Abu Shifa user did not identify himself with names other than those associated with Musaibli (e.g., Ibraheem, Izzy's son, Abu Shifa, etc.).

Third, while many of the exchanges between Musaibli and others are short, there are three lengthy conversations contained within the Abu Shifa account with individuals with whom the defendant had a close relationship: his father in Dearborn, his brother-in-law in Yemen, and his cousin in Egypt. More than half of the 300 pages of conversations from the Abu Shifa account are between Defendant and these three people. Those conversations contain consistent references to Musaibli's children (including pictures of his children), his current wife, his ex-wives, his

siblings, the Musaibli family perfume store, and past grievances between Defendant and his family.

Fourth, throughout his Facebook messages, the Abu Shifa user consistently identified his location as being in Iraq, where Musaibli admittedly was located throughout the active time period of the Abu Shifa Facebook account. Moreover, the searches made by Abu Shifa included not only family members (as mentioned above) but searches for the Islamic State and Al Qaeda. This is relevant to establish the identity of the user of this account because the defendant admitted to living with the Islamic State and supporting certain offshoots of Al Qaeda.

Finally, the FBI followed up its original search warrant for the contents of this account with a supplemental search warrant for the period between the first account search warrant and the time Musaibli was captured in Syria. The second search warrant return showed that Musaibli changed the moniker from Abu Shifa to Abu Abd al Rahman, which translates to "father of Abd al Rahman." Abd al Rahman is Defendant's eldest son's name. Moreover, Abu Abd al Rahman is a kunya Musaibli admitted to using while with the Islamic State and was the kunya identified by the Islamic State in the documents recovered about him. The second search warrant return contained conversations between Defendant and his father where Musaibli asks for copies of his marriage contract with his third wife and "identification of all my kids (sic) papers, passports anything." And like the first search warrant return,

the second search warrant showed another lengthy conversation with Defendant's cousin from Egypt, to whom he provided a new WhatsApp number. That same WhatsApp number was found in Musaibli's father's phone during a search warrant at the family home and was used by Musaibli to communicate with his father.

The FBI's investigation identified four other Facebook accounts belonging to Defendant. None of these were as extensively used as the Abu Shifa page yet still contained clear indicators that they were used by Musaibli. They are each described by the last four digits of the account number.

- Account ending in 4263 used the name Ibrahim al Musaibli, contained a picture of Defendant, a picture of one of Defendant's sons, chats with other Musaiblis, and the user identified his WhatsApp number as one known to be used by Musaibli to communicate with this father.

- Account ending in 6026 used the name Ibrahim Izzy al-Musaibli, provided Facebook with an email account with the name "shifa" in it, contained a conversation with the Egyptian cousin, and provided other users the same WhatsApp number provided in both the 4263 account and in the second Abu Shifa search warrant return.

- Account ending in 3587 used the name Ibraheem Izzy Musaibli, had many friends with Musaibli as the last name, was friends with the undercover account used by Officer Wendy Kerner during Musaibli's overt contacts

7

with her, provided identifying information in chats (e.g., "left America a while ago"), and contained pictures of Musaibli and all of his children.

- Account ending in 0898, despite being used just one time, identified the user as "Ibraheem Izzy" and contained a chat conversation with Musaibli's mother.

Thus, all of the Facebook accounts to be used at trial were used by and belonged to Musaibli.

**B.  The Email Accounts**

Prior to leaving the United States, Musaibli opened two different email accounts through service provider Yahoo!. The first account—abemusa1212 (the "Abe Musa account")—was opened on March 19, 2014. The second account—mike.john831 (the "Mike John account")—was opened about a month later on April 11, 2014. According to Yahoo!, the accounts were opened from the same IP address. The FBI later obtained a search warrant for both accounts. The contents of the accounts demonstrate that they belonged to Musaibli.

For the Abe Musa account, several emails relate to the family perfume business, with the user ordering sprayers, oils, or other items to be used in making perfume. Other emails were more personal, including this one with the subject line as "Ibraheem" and the body of the email containing the name of Musaibli's second wife, Amira:

8



A similar email read as follows:



Three other emails to variations of the same address had "Ibraheem" as the subject line and mentioned Musaibli's second wife in the body of the email. Musaibli identified himself in another email to a fellow Musaibli:



Other emails within the Abe Musa account ask Muslim scholars for advice about whether to join jihad in Syria, Libya, Egypt, or elsewhere, with the author offering in one email that he is "living in usa." Finally, the Abe Musa account contains emails asking the Yemen internet service provider to block certain pornography sites during the time when Musaibli was in Yemen, and several other emails relate to Muslim dating sites, something the defendant was known to use.

     Similar to the Abe Musa account, several emails in the Mike John account related to jihad in different areas of the world and the account contained emails to Muslim dating sites just as in the Abe Musa account. The Mike John account contained many emails from DTE Energy about payments being due. DTE addressed the emails to Ibraheem Musaibli at one of Defendant's former addresses. Facebook likewise sent emails to this account related to one of Musaibli's former Facebook accounts. Finally, Musaibli told the FBI that he went to Saudi Arabia prior to sneaking into Syria. An email within the Mike John account confirms that someone attempted to log into the account from Saudi Arabia:



Musaibli also used the family business account: meccaaroma@yahoo.com to communicate with others. To be clear, other members of the Musaibli family used that account as well. The government intends to offer only those emails related to Musaibli at trial. For example, Musaibli identified himself in the subject line of many emails while sending links to various Islamic websites, as in the following email:



Musaibli also identified himself in the following email sent just a few months prior to leaving for Syria:



Thus, it is clear that Musaibli used the Mecca Aroma account as well as the Abe Musa and Mike John accounts.

**C.     Relevant Procedural History**

Thus, Musaibli's use of email and Facebook to communicate with others played a significant role in the FBI's investigation. Musaibli eventually used Facebook and Telegram to communicate overtly with the FBI before eventually being captured by the Syrian Democratic Forces ("SDF"). The SDF eventually contacted the United States about Musaibli, who was later flown back to the United States from Syria.

A grand jury indicted Musaibli for providing material support to ISIS, conspiring to do so, and attending a terrorist training camp. Trial is set for next month.

# II
# ARGUMENT

Musaibli moves in limine to require the government to authenticate that he "authored or read the Facebook post, messages, or emails it seeks to admit outside the presence of the jury." (ECF No. 201, PageID.2313). This is unnecessary and overly time consuming. No case requires the Court to hold a hearing outside the presence of the jury. Instead, the trial judge has wide discretion in deciding how to handle evidentiary hearings. *See, e.g.*, Fed. R. Evid. 104(c) (stating that hearings on preliminary matters other than the admissibility of confessions may be conducted out of the hearing of the jury "when the interests of justice require"); Fed. R. Evid. 611(a) (empowering district courts to exercise "reasonable control" over mode and presentation of evidence). As the Advisory Committee notes following Rule 104(c) make clear, such preliminary hearings are "time consuming. Not infrequently the same evidence which is relevant to the issue of establishment of fulfillment of a condition precedent to admissibility is also relevant to weight or credibility, and time is saved by taking foundation proof in the presence of the jury." Fed. R. Evid. 104, 1972 Advisory Note to sub. (c). And so it is here. The government's trial presentation will establish that Musaibli is the author of the emails and Facebook posts, and a pretrial hearing on this issue would be time-consuming and need to be repeated before the jury. Instead, allowing the "foundation proof" to be taken "in the presence of the jury" will save time.

Nor would Musaibli suffer any prejudice in having the authentication testimony presented to the jury. The authentication burden is minimal, requiring only that the proponent "produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901. The government intends to provide testimony similar to that outlined above regarding the authorship/use of the various accounts at issue here. To be clear, the government will present evidence one account at a time and, for each account, will establish the foundation for authentication first before introducing more substantive statements. Such testimony will allow the Court to determine that the authenticity burden has been met prior to publication to the jury. The advisory committee notes again provide some guidance here: "Much evidence on preliminary questions, though not relevant to jury issues, may be heard by the jury with no adverse effect." Fed. R. Evid. 104, 1972 Advisory Note to sub. (c). Because Musaibli would suffer no prejudice and a hearing outside the presence of the jury would be unnecessarily time consuming, the motion should be denied.

# III
# CONCLUSION

For these reasons, the Court should deny Defendant's motion to hold a pretrial hearing on authentication of the Facebook messages and email communications.

DAWN N. ISON
United States Attorney

s/*Kevin M. Mulcahy*
Kevin M. Mulcahy
Hank Moon
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226
Kevin.Mulcahy@usdoj.gov
(313) 226-9713

Date:  December 29, 2021

## CERTIFICATE OF SERVICE

I hereby certify that on December 29, 2021, I electronically filed the foregoing document using the ECF system, which will send notification of filing to the counsel of record.

s/Kevin M. Mulcahy
Assistant U.S. Attorney

15