UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA

Plaintiff,

v.

Case Number 18-20495
Honorable David M. Lawson

IBRAHEEM IZZY MUSAIBLI,

Defendant.

______________________________/

**OPINION AND ORDER GRANTING GOVERNMENTS' *EX PARTE* MOTIONS FOR A PROTECTIVE ORDER TO WITHHOLD DISCLOSURE OF INFORMATION TO THE DEFENSE UNDER THE CLASSIFIED INFORMATION PROCEDURES ACT**

The government has filed two motions for orders under the Classified Information Procedures Act (CIPA), 18 U.S.C. app. 3, and Federal Rule of Criminal Procedure 16(d)(1), that would permit it to delete from its discovery production certain information obtained during national security investigations and military operations abroad, and to withhold that information from the defense. An unclassified portion of the first motion was e filed on the docket (ECF No. 73); the second motion has not been e-filed and has been presented only in classified form. The Court has reviewed the government's submissions *in camera* and is satisfied that the government has established that, although the information may be discoverable, it is privileged and it would not be helpful to the defense. Therefore, the Court will grant the motions and permit the government to delete the listed classified material from any discovery it otherwise would be required to furnish to the defendant.

I.

Defendant Ibraheem Izzy Musaibli was charged in a superseding indictment with violating 18 U.S.C. § 2339B by providing and attempting to provide material support to a designated foreign

terrorist organization (Count 1); conspiracy to provide material support to a foreign terrorist organization (Count 2); violating 18 U.S.C. § 924(c)(1)(A) and (B)(ii) by possessing and discharging a firearm (machine gun) in furtherance of a crime of violence (Count 3); and violating 18 U.S.C. 2339D(a) by receiving military type training from a foreign terrorist organization (Count 4) . The charges arise from the defendant's alleged engagement in training and combat with the Islamic State of Iraq and al Sham ("ISIS") between April 2015 and June 2018. On July 29, 2019, the Court granted the government's unopposed motion to dismiss Count 3 and dismissed as moot the defendant's motions challenging that count.

In an unclassified portion of the government's first motion regarding classified materials, the government provided the following narrative of the defendant's alleged involvement with ISIS through the years.

The United States Department of State first learned about the defendant from an email tip received in July 2016, which suggested that the defendant was involved in a "jihad" in Iraq. The email included a photograph of the defendant with a rifle. The Federal Bureau of Investigation (FBI) investigated the tip and found that Musaibli was a United States citizen who resided in Dearborn, Michigan before going abroad. The FBI also discovered that the defendant left the United States and went to Yemen in April 2015. He spent around six months there before leaving to join ISIS. On the way to Iraq, he traveled through Syria and Turkey.

By October or November 2015, the defendant was in Raqqa, Syria, which then was the declared capital of ISIS. While there, he attended a 10-day ISIS religious training camp, and from there he departed with other ISIS members to attend an ISIS military training camp in Mosul, Iraq. The government believes that the military tactics taught to Musaibli included firing and moving

with a machine gun and ambush techniques. After he completed the military training exercises, the defendant supposedly swore allegiance to ISIS and its leader, Abu Bakr Al-Baghdadi.

The defendant then was assigned to an ISIS military brigade, which issued him a Kalashnikov fully automatic assault rifle, a vest, magazines for the rifle, and grenades. He then moved out with his unit to Hit, Iraq, where a battle was occurring. The defendant told law enforcement agents that on this first deployment he conducted armed guard patrol on the front lines of the battle but did not engage in any direct combat.

Throughout his service with ISIS, the defendant posted frequently on social media. The government obtained copies of his postings on Facebook, which reflected his involvement in the training and deployments described above. He also engaged in some debate with commenters on his posts, claiming, among other things, that he never killed any civilians. The government also says that it obtained documents from ISIS memorializing the defendant's enlistment and activities with ISIS military units. The government also obtained recorded conversations in which Musaibli said that he expected when he first joined ISIS to remain only for eight months or a year, but the government alleges that his enlistment continued for 2-1/2 years.

By November 2016, the defendant was stationed at an ISIS stronghold in Dayr Az Zawr, Syria, where he performed guard duty and fought the Syrian army. However, the defendant told investigators that he only fired his weapon at Syrian forces on two occasions. The defendant eventually was captured by Syrian military forces in July 2018, and he later was turned over to United States authorities to be repatriated and face terrorism charges.

The government represents that it is informed, or believes, that the defendant may attempt to defend against the charges on the grounds that he was merely present in the theater of war, but did not provide any material support to ISIS, that he only was engaged in menial, non-combat

duties such as cooking and cleaning, that he never supported wholly the ideology or terrorist goals of the organization, and that he was in fact imprisoned for denouncing ISIS violence and attempted unsuccessfully to flee ISIS territory.

The defendant was indicted on July 19, 2018, and the first superseding indictment was filed on April 9, 2019. After some preliminary motion practice and two competency evaluations, the Court reset the trial date and established new case management benchmarks. However, many of the scheduled trial dates were derailed by court closures and other procedures required to combat the global pandemic. Jury selection presently is scheduled to begin on January 11, 2022.

II.

The government argues in each of its motions that none of the information it seeks to withhold is discoverable under Federal Rule of Criminal Procedure 16 or otherwise, and that the information is classified because n could reveal sources and methods of intelligence gathering, so that revealing it could jeopardize national security. The government also believes that the substance of all the information contained in the documents it seeks to protect has been disclosed to the defense already.

The Classified Information Procedures Act (CIPA), 18 U.S.C. app. 3, "sets forth a series of rules for preserving the confidentiality of classified information, for allowing discrete use of classified information, and for reviewing district court orders disclosing such information." *United States v. Asgari*, 940 F.3d 188, 189 (6th Cir. 2019). "'Classified information' [] means any information or material that has been determined by the United States Government pursuant to an Executive order, statute, or regulation, to require protection against unauthorized disclosure for reasons of national security [and certain other categories of 'restricted data' governed by the

Atomic Energy Act]." CIPA § 1, 18 U.S.C. app. 3, § 1. Section 4 of the Act specifies the procedure for the government to seek authorization to withhold classified information:

> The court, upon a sufficient showing, may authorize the United States to delete specified items of classified information from documents to be made available to the defendant through discovery under the Federal Rules of Criminal Procedure, to substitute a summary of the information for such classified documents, or to substitute a statement admitting relevant facts that the classified information would tend to prove. The court may permit the United States to make a request for such authorization in the form of a written statement to be inspected by the court alone. If the court enters an order granting relief following such an *ex parte* showing, the entire text of the statement of the United States shall be sealed and preserved in the records of the court to be made available to the appellate court in the event of an appeal.

CIPA § 4. The Act also authorizes the Court to issue protective orders to govern handling of any classified information that is produced to the defense. CIPA § 3 ("Upon motion of the United States, the court shall issue an order to protect against the disclosure of any classified information disclosed by the United States to any defendant in any criminal case.").

To seek an order permitting withholding of classified information, the government may proceed by filing an *ex parte* motion for a protective order under Federal Rule of Criminal Procedure 16(d), which authorizes the Court to "deny, restrict, or defer discovery or inspection or grant other appropriate relief," upon a showing made through a "written statement that the court will inspect *ex parte*." Fed. R. Crim. P. 16(d)(1). In the usual case, the government's burden on a Rule 16(d)(1) motion requires a showing of "good cause," but CIPA section 4 supplants that criteria, which is not further defined by Rule 16, and the Act "'clarifies [the] district court's power under [Rule] 16(d)(1) to issue protective orders denying or restricting discovery for good cause.'" *United States v. Moussaouoi*, 591 F.3d 263, 282 (4th Cir. 2010) (quoting *United States v. Aref*, 533 F.3d 72, 78 (2d Cir. 2008)). However, "[t]he Advisory Committee notes to Rule 16 make clear that 'good cause' includes 'the protection of information vital to the national security.'" *Aref*, 533 F.3d at 78 (quoting Fed. R. Crim. P. 16 Adv. Comm. notes to 1996 amends.)

The government may withhold classified information from the defense "upon a 'sufficient showing' to the district court." *Asgari*, 940 F.3d at 191 (quoting 18 U.S.C. app. 3, § 4). Determining whether the government's showing is "sufficient" to satisfy the Act requires "balanc[ing] the government's interests in keeping the information secret against the defendant's interest in information that is 'relevant and helpful' to his defense." *Ibid.* (quoting *United States v. Amawi*, 695 F.3d 457, 469-70 (6th Cir. 2012)). In so doing, "[t]he court steps into 'the shoes of defense counsel, the very ones that cannot see the classified record, and act[s] with a view to their interests.'" *Ibid.* (quoting *Amawi*, 695 F.3d at 470). When considering whether to allow the withholding, "the court keeps three factors in mind: (1) whether the information is 'relevant'; (2) the government's privilege claim for secrecy is 'colorable'; and (3) the information is 'helpful' to the defense." *Ibid.* The defense is not entitled to access the information in question for any reason during this process, because "[n]othing in [CIPA] § 4 suggests that defense counsel has a role to play when the district court assesses the relevance or helpfulness of the classified information." *Id.* at 192. "Just the opposite. The statute refers to the district court's assessment of these factors through an *ex parte* hearing ('a written statement to be inspected by the court alone') that occurs without the defendant's knowledge ('If the court [grants relief] following such an *ex parte* showing, the entire text of the statement of the United States shall be sealed.')." *Ibid.* (quoting CIPA § 4). That remains so even if counsel holds a high security clearance and has been authorized to handle classified information of the level concerned in the motion. *Ibid.*

The "relevant and helpful" standard first was enunciated by *United States v. Yunis*, 867 F.2d 617 (D.C. Cir. 1989), the "leading case construing whether courts can permit the government to withhold evidence from discovery under CIPA § 5." *Amawi*, 695 F.3d at 469. In that case, the court adapted the factors announced by the Supreme Court as governing the so-called "informers

privilege" in *Roviaro v. United States*, 353 U.S. 53 (1957). Other circuits, including the Sixth, followed suit in adopting the analysis espoused in *Yunis*. *Id.* at 470. "CIPA does not itself create a government privilege against the disclosure of classified information; it presupposes one." *United States v. Hanna*, 661 F.3d 271, 295 (6th Cir. 2011). That presumptive privilege "'must give way under some circumstances to a criminal defendant's right to present a meaningful defense,'" but only where the information is "'at least helpful to the defense.'" *Ibid.* (quoting *Aref*, 533 F.3d at 79; *Roviaro*, 353 U.S. at 60-61) (quotations marks omitted).

A.

[redacted]







* * * * *

The FBI's Assistant Director's declaration satisfies the threshold requirement for withholding information. "The Government's right to protect such information is absolute, and [the Court may] not second guess such determinations" in the context of CIPA motion practice. *United States v. Moussaoui*, 591 F.3d 263, 281 n. 15 (4th Cir. 2010); *see also United States v. Abu Ali*, 528 F.3d 210, 253 (4th Cir. 2008) ("We are not asked, and we have no authority, to consider judgments made by the Attorney General concerning the extent to which the information in issue here implicates national security.").





The government's first motion for a protective order under CIPA and Rule 16(d)(1) will be granted.

B.

[redacted] In its second motion, the government asks to withhold certain documents identifying certain classified details of military operations. Those operations included the seizure of certain paper and electronic documents relating to the defendant, and the government already has produced to the defense all of those documents and information. The operations also resulted in the recovery of records kept by ISIS that included biographical details of other ISIS fighters. The government already has disclosed to the defense the portions of the rosters that identified the defendant as an ISIS fighter and which included details such as his name, birthdate, rank, and assignment to front line positions (along with notes about discipline for leaving the front without permission). Other documents included payroll records, budgets, and hospital records, which explicitly mention the defendant and identify him as a member of ISIS. All of those documents have been produced in unclassified form and furnished to the defense.

[redacted] However, the government asks the Court to allow the withholding of certain other military reports that include the [redacted]. The government proposes to provide unclassified summaries of the circumstances of capture that omit those details.

**A. Government's Arguments**

[redacted] In its second motion for a protective order, the government seeks to withhold from production the [redacted]. It argues that this information is, if anything, only inculpatory, and those details would not be helpful to establishing any conceivable defense to the charges that the defendant may pursue. The government asserts that

there is no information suggesting that any of [REDACTED] would not aid the defense. Lieutenant General Scott Howell, of the United States Air Force, attested in a declaration that revealing [REDACTED] would seriously compromise the ability of [REDACTED].

1. Operation [REDACTED]

[REDACTED] The government already has produced to the defense several spreadsheets containing budget and roster information that were captured during this operation. It proposes to provide an unclassified summary of the circumstances of the seizure stating: "On December 27, 2017, Coalition Forces conducted an operation in the vicinity of Ar Ryhaniyah, Dashisha District, Hasaka Province, Syria. Items seized include one Garmin GPS, two tablets, five laptops, four external hard drives, 21 phones, eight thumb drives, and hard copy documents." And the government has offered some of the substantive information in the record at an earlier evidentiary hearing in this case. The government proposes to withhold a classified document stating the Department of Defense (DOD) name of the operation, the names of a [REDACTED] those other persons (none of whom the government believes knew Musaibli or had any relationship to him).

2. Payroll Spreadsheet

The government has produced a payroll spreadsheet that was found on electronic media given to U.S. forces by allied forces in June 2017, and it offered that item in evidence at an earlier evidentiary hearing. The government proposes to provide an unclassified summary indicating the month and year when the media was captured, the latitude and longitude, and that U.S. forces received the media. It proposes to omit from that summary the

3. Tariq bin Ziyad Documents

The government recovered several documents on MicroSD cards during an operation in November 2016, in Mosul, Iraq. It already has produced those documents to the defense. It proposes to produce the following unclassified summary of the circumstances of recovery: "On November 14, 2016, Host Nation Forces conducted an operation and recovered media contained on two (2) MicroSD cards in the vicinity of Mosul, Iraq." It proposes to omit the identity of

4. Other ISIS Documents

In January 2017, the government seized documents and a damaged hard drive that included such things as an ISIS "after action report" from the battle in Hit, Iraq, which included, among other things, commentary identifying reasons that ISIS lost the battle, with details such as names of fighters (including Musaibli) who left the front lines during combat. The government already has produced the documents to the defense and offered it into evidence that the hearing referenced above. It proposes to produce an unclassified summary of the circumstances of capture stating: "On January 3, 2017, U.S. Forces received a damaged hard drive and hard copy documents

recovered in the vicinity of Mosul, Iraq." It proposes to withhold a classified report documenting the capture in more detail, including stating [REDACTED]

[REDACTED] The government similarly proposes to provide an unclassified summary stating the date when Coalition Forces recovered a laptop, one hard drive, one thumb drive, and hard copy documents during a January 8, 2017 operation between Mayadin and Raqqah, Syria. It proposes to withhold a [REDACTED].

5. Operation [REDACTED]

[REDACTED] The government seized several ISIS documents including a "wanted poster" and a roster of deserters whose capture ISIS sought. The government proposes to provide an unclassified summary stating that those documents were found on media "received by U.S. Forces" on January 18 and February 10, 2017, in the vicinity of Mosul, Iraq. It proposes to omit from the unclassified disclosures the [REDACTED].

* * * * *

[REDACTED] The government proposes minimal redactions from most of the military reports, withholding only the circumstances under which certain documents were seized, and withholding more detailed reports discussing unrelated details of the operations, instead offering to provide unclassified summaries of those reports that conceal [REDACTED]. As discussed

above, the government has met the threshold requirement for withholding by supplying a declaration by a senior military officer attesting that the details of those operations are classified.

[REDACTED] None of the limited information that would be omitted, consisting of official military names for the operations or reference numbers, has any apparent relevance to any charge or defense in this case, since the government has not espoused any theory of the case under which the defendant would be held liable for opposition to any of the specific operations mentioned.

The government certainly has made a colorable showing that the disclosure of [REDACTED] [REDACTED] [REDACTED], all could seriously compromise ongoing military operations by those same units, in the same regions, some of which according to the government's information continue to this day.

[REDACTED] Finally, none of the marginal details that would be deleted are in any apparent way helpful to the defense. The government proposes to identify the date and location for each of the seizures, and to describe in general terms the means by which the information was obtained, sufficiently for the defendant to raise any plausible challenge to the proofs that might be developed, such as that he was not present or did not participate in ISIS activities at the relevant times and places. The substantive information seized already has been provided to the defense and is fully available for him to attempt any rebuttal of other factual details. The government represents that there is no information suggesting that the named targets of the operations in question, who in most cases were killed or captured, had any knowledge of Musaibli that could prove useful in any attempt to exonerate him. The minimal additional details that will be redacted would not be helpful to any further development of the case for the defense. As noted in an earlier opinion on the government's motion to admit some of the seized ISIS documents, the government proceeds at its peril by

limiting the information provided, and may have difficulty meeting challenges to the chain of custody. But that difficulty is for the government to assess itself.

III.

The government has made the necessary showing under CIPA and Federal Rule of Criminal Procedure 16(d)(1) to obtain a protective order that allows it to delete from its discovery production the information discussed above.

Accordingly, it is **ORDERED** that the government's first motion (ECF No. 73) and undocketed second motion for a protective order authorizing it to withhold certain classified information from discovery production are **GRANTED**.

It is further **ORDERED** that the government is not required to provide to the defense any of the classified information identified in its motions.

It is further **ORDERED** that the government is authorized under CIPA § 4 and Federal Rule of Criminal Procedure 16(d) to delete all of the classified information identified in the motions from its discovery production.

It is further **ORDERED** that the entire text of the government's motions and exhibits shall not be disclosed to the defense, but shall remain sealed and preserved in the records of the Court to be made available to the appellate court in the event of an appeal.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: December 30, 2021