UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                        Plaintiff,                             Case Number 18-20495

v.                                                  Honorable David M. Lawson

IBRAHEEM IZZY MUSAIBLI,

                        Defendant.

_____/

**ORDER DENYING DEFENDANT'S SECOND
MOTION FOR RELEASE ON BOND**

Defendant Ibraheem Izzy Musaibli has been held in pretrial detention for nearly four years — 46 months and counting. He is charged with serious terrorism-related crimes, and the Court previously determined that there is no condition or combination of conditions that can assure the safety of the community and Musaibli's appearance at trial. Based on that finding, the Court ordered continued detention, as it must, 18 U.S.C. § 3142(e)(1), when Musaibli asked to revoke the detention order in May 2021. ECF No. 143. Now, a year later, with no trial date on the horizon, Musaibli asks again to revoke the detention order. A court may reopen a detention hearing when new information comes to light that has a material bearing on the community safety and risk-of-flight determinations. 18 U.S.C. § 3142(f)(2)(B). Musaibli has offered some evidence on the availability of a third-party custodian, but beyond that, not much has changed since the earlier order was entered. However, another aspect of this prolonged detention must be considered: that pretrial detention violates the Fifth Amendment's Due Process Clause when it amounts to "punishment of the detainee." *United States v. Watson*, 475 F. App'x 598, 601 (6th Cir. 2012) (quoting *Bell v. Wolfish,* 441 U.S. 520, 535 (1979)).

Of the four factors courts must consider when determining if a lengthy pretrial detention abridges due process, two of them weigh heavily against the government, namely, its responsibility for the delay of the trial, and the length of the detention.  The case has been delayed by numerous complications.  Seventeen months of the cumulative 46-month delay was caused by global-pandemic-related courthouse closures, which is a circumstance beyond the influence of either party.  However, nearly half of the 29-month remainder of the total delay was caused by the government's mishandling of the defendant's competency evaluation by disregarding this Court's order, and by a questionable interlocutory appeal that is premised on false representations that the government made to the court of appeals about the nature of the order appealed.  However, the other factors, discussed in detail below, together provide a substantial counterweight that tips the balance against finding a due process violation compelling pretrial release.  And the considerations outlined in the Bail Reform Act point to continued detention, as before.  The defendant's second motion to revoke the detention order, therefore, will be denied.

I.

The lengthy history of the case in this Court began on July 19, 2018, when the defendant was charged in a single-count indictment with providing and attempting to provide material support to a designated foreign terrorist organization, contrary to 18 U.S.C. § 2339B.  On April 9, 2019, the charges were expanded in a superseding indictment, which added charges for (1) conspiracy to provide material support to a foreign terrorist organization, 18 U.S.C. § 2339B (Count II), (2) possessing and discharging a machine gun in furtherance of a crime of violence, 18 U.S.C. § 924(c)(1)(A), (B)(ii) (Count III), and (3) receiving military-type training from a foreign terrorist organization, 18 U.S.C. § 2339D(a) (Count IV).  On July 29, 2019, the Court granted the

government's unopposed motion to dismiss the charge for possession of a firearm in furtherance of a crime of violence (Count III).  Counts I, II, and IV remain pending for trial.

The defendant's initial appearance in the case occurred on July 25, 2018, and he has been detained from then until now.  On July 27, 2018, the defendant consented to pretrial detention.  On July 30, 2018, the Court issued its first scheduling order setting the case for trial on September 18, 2018.

On August 8, 2018, the Court held a status conference with counsel for the parties, during which the parties reported that they expected the discovery in the case to be voluminous and to be produced in several substantial waves.  They jointly requested an adjournment of the trial and final pretrial deadlines to allow them more time to prepare for trial.  That joint request was granted, and the trial was adjourned to February 19, 2019.

On October 15, 2018, the defendant filed an unopposed motion to extend the pretrial motion filing deadline.  In that motion he indicated that the government had produced several voluminous batches of material obtained by search warrants, and the discovery production was ongoing.  The defendant asked the Court to extend the motion deadline to allow his attorneys to review all of the discovery adequately and to avoid the need for "piecemeal litigation" of pretrial issues.  That motion was granted on October 22, 2018, and the defendant's motion filing deadline was extended to December 15, 2018.

On December 4, 2018, the Court held another status conference with the defendant and counsel for the parties.  During the conference, the government reported that it had made substantial progress in producing most of the discovery materials, but the production of some information was delayed because it was in the custody of other federal agencies, and because some classified information had not been cleared for release.  The defendant's lawyers indicated that the

defendant intended to file several pretrial motions, but they had not yet done so because they were concerned that the issues to be presented in the motions might obstruct productive plea negotiations.  The defendant's lawyers also indicated that they might need to travel abroad to locate and interview witnesses, and they needed more time to plan and arrange any such excursions.  The defendant made an oral motion for a further adjournment, which the government did not oppose. That motion was granted, and the trial was adjourned to August 6, 2019.

On February 25, 2019, the defendant filed a motion to authorize issuance of subpoenas under Federal Rule of Criminal Procedure 17(c) through which he sought to obtain certain information from third parties that could be relevant to certain issues presented by his anticipated trial defenses.  That motion was granted on the same date.

On March 18, 2019, the parties presented a stipulation to extend the deadline for the government to file a superseding indictment.  Based on that joint request, the deadline to supersede was extended to April 11, 2019.  The government filed the first superseding indictment on April 9, 2019.

On April 15, 2019, the defendant filed a motion for a competency evaluation.  Defense counsel stated that Musaibli's cognitive functions had been deteriorating steadily, and he suspected that Musaibli was suffering from a neurocognitive disorder.  He asked that Musaibli be sent to a Bureau of Prisons medical facility that could observe him and perform neuropsychological testing. ECF No. 50, PageID.113-14.  That motion was granted on April 26, 2019.  In its amended order granting the motion, the Court expressly directed the Bureau of Prisons to transport the defendant to a facility where "neuropsychological testing" could be conducted as part of the evaluation process.  ECF. No. 56.  On May 8, 2019, after the BOP informed the Court about its designation

of the examination facility, the Court ordered the transportation of the defendant to the Federal Metropolitan Detention Center, in Los Angeles, California.

On May 1, 2019, the defendant filed two motions to dismiss Count III of the first superseding indictment, on the grounds that (1) the underlying charge of providing material support to a foreign terrorist organization did not qualify as a "crime of violence," and (2) the statute in question did not authorize jurisdiction over acts that allegedly occurred abroad, entirely in the territory of Iraq and Syria. The Court scheduled a hearing on those motions for June 26, 2019, which subsequently was adjourned to August 1, 2019 at the request of the parties. However, on July 18, 2019, the government filed its own unopposed motion for dismissal of Count III, which was granted on July 29, 2019.

The initial competency examination was completed and the report was sent to defense counsel on July 25, 2019. The report revealed obvious problems with the government's work: (1) information was included in the report that related to persons other than the defendant, and (2) the neuropsychological testing previously ordered by the Court had not been conducted. Defense counsel immediately filed a motion for a second competency evaluation. The Court granted the second motion and ordered the BOP to designate a new facility and examiner for a second, complete examination, according to the Court's express direction for neuropsychological testing. On August 13, 2019, after the BOP informed the Court about the new designation, the Court ordered the transportation of the defendant to the Federal Medical Center in Butner, North Carolina. Despite the fact that the transportation was authorized in mid-August, the Court later was informed that the BOP delayed the transfer to the assigned facility until November 13, 2019. No satisfactory explanation for that delay ever was presented to the Court.

On December 16, 2019, the defendant filed a *pro se* motion asking the Court to assign a new lawyer for his defense, in which he stated that he was unhappy with various aspects of his interactions with his appointed counsel. The Court scheduled a hearing on that motion for February 26, 2020, so as not to interfere with the competency evaluation.

On January 10, 2020, the Court entered an order establishing a final deadline of January 17, 2020 for the completion of the second competency examination. In that order, the Court sharply criticized the government for the failures of its examiners and prison administrators to comply with the Court's previous orders, which the Court found had caused a substantial delay of the competency proceeding. As the Court observed:

> In April 2019, the Court granted defense counsel's motion for a competency evaluation, specifically directing the Bureau of Prisons to ensure that the defendant was designated to a facility that would provide neuropsychological testing. The BOP did not release its report under that order until July 25, 2019. When the report was produced, it was apparent that the examiner failed to comply with the Court's order, did not conduct neuropsychological testing, and included information in the report that did not pertain to the defendant. The BOP's substandard work prompted a second order for a competency evaluation on August 6, 2019. The BOP did not transfer the defendant to a facility capable of performing the ordered neuropsychological testing until November 13, 2019. The BOP has requested extensions to complete the ordered evaluation, which the Court granted. On January 6, 2020, the Court received a letter from the BOP requesting yet another extension through January 17, 2020 to complete its evaluation and another 14 days to submit a report.
>
> The BOP has taken an inordinately long time to complete the work ordered by the Court in this serious case. However, without its evaluation, the prosecution cannot proceed. The Court, therefore, is constrained to grant this one last extension. If the report is not received within the time allowed, the Court will order the appearance of the responsible parties to explain why the Court's orders were not complied with.

Order Setting Evaluation Deadline, ECF No. 82, PageID.261. Despite the establishment of a January 17, 2020 deadline, the report of the government's second examination was not produced until almost a month later, on February 14, 2020.

On February 21, 2020, the Court set a competency hearing and a hearing on the defendant's motion for new counsel for March 18, 2020. The completion of that hearing, however, was delayed substantially by the circumstances accompanying the global coronavirus pandemic.

The public health crisis of the global pandemic compelled the total closure of the federal courthouse in Detroit from the onset of widespread community transmission of the coronavirus on March 13, 2020 eventually until September 7, 2021, when, with certain enhanced safety protocols and severe limitations on the number of persons permitted to attend public trials in person, the federal courthouse finally reopened for limited scheduling of criminal jury trials. *See* E.D. Mich. Admin. Order 20-AO-021 (Mar. 13, 2020) (finding that the pandemic "reduced ability to obtain an adequate spectrum of jurors" and finding that "the ends of justice served by ordering the postponements outweigh the best interest of the public and any defendant's right to a speedy trial"); E.D. Mich. Admin. Order 20-AO-039 (July 21, 2020) (finding that complications caused by the pandemic rendered "proceeding with a jury trial at this time . . . impossible, or [would] result in a miscarriage of justice"); E.D. Mich. Admin. Order 20-AO-038 (Sept. 8, 2020) (establishing "Phased-in Recovery Plan" for resumption of in-person proceedings); E.D. Mich. Admin. Order 21-AO-022 (Sept. 3, 2021) (establishing safety protocols for persons entering the federal courthouse preparatory to the resumption of in-person public proceedings on September 7, 2021); *see also* E.D. Mich. Admin. Order 21-AO-023 (Sept. 22, 2021) (further extending authorization of teleconferencing and video conferencing for certain criminal proceedings).

From March 13, 2020 until September 7, 2021, the Court conducted no jury trials and held only extremely limited in-person proceedings in criminal cases, including a hearing in this case that occurred over two days in June 2021. However, the Court continued to hold regular criminal appearances via video conferencing facilities when authorized by law and consented to by the

parties.  The competency hearing and a hearing on the defendant's motion for new counsel was held via video conferencing on July 16, 2020.  On that same date, the Court issued an order determining that the defendant was competent to proceed to trial.  The defendant's motion for new counsel then was withdrawn.

In the meantime, on May 28, 2020, the Court had granted a separate motion by the defendant for appointment of additional consultation counsel, who was assigned in a limited capacity to advise the defendant on certain questions he had raised about the propriety of his representation by the lawyer whom the Federal Community Defender had appointed to represent him.  On July 25, 2020, the defendant filed a motion for appointment of his consultation counsel as full scope co-counsel for the remainder of the case.  The Court granted that motion August 3, 2020, and the defense team thereafter consisted of two lawyers from the Federal Defender organization and one additional lawyer from the CJA panel.

On August 20, 2020, in anticipation of a possible resumption of in-person proceedings, the Court issued an amended scheduling order setting a new trial date of November 3, 2020.  However, the defense team responded with a request for a lengthy adjournment of the trial date.  The Court held a status conference to discuss the request, and its order granting the adjournment included the following observations:

> During the conference, the defense asked the Court to consider significant adjustments to the scheduling order, which were proposed in earlier correspondence with the Court. The defendant's attorneys stated that the adjustment is needed because newly appointed counsel needs significant time to familiarize himself with the case, considering the vast amount of discovery materials that have been produced, and the complexity of the legal issues that need to be considered concerning, among other things, the admissibility and chain of custody for some of the documents that the government has produced, which allegedly were seized from ISIS sources. The defendant's attorneys also represented that their attempts to arrange interviews with many witnesses located abroad were delayed by difficulties communicating with the defendant during the extended pendency of two competency evaluations, and that those efforts also

recently have been foreclosed by circumstances arising from the ongoing global pandemic. Counsel believe, however, that they will be able to contact the witnesses concerned and arrange for interviews, some of which may need to be conducted abroad, if they are allowed more time to continue their efforts. The government did not oppose the defendant's request for a scheduling adjustment.

Order Adjourning Trial, ECF No. 100, PageID.310 (Sept. 2, 2020). The defense request for an adjournment was granted, and the trial was reset for October 5, 2021. The same order also enlarged the motion filing deadline for both sides to December 31, 2020.

On December 31, 2020, the parties filed several significant pretrial motions concerning admissibility of evidence and other issues. The government filed a motion seeking a ruling on the admissibility of numerous hearsay documents allegedly produced by the ISIS organization and its military components, including the battalion in which the defendant allegedly enlisted as a jihadi soldier. The defendant filed motions (1) seeking a bill of particulars, (2) challenging the admissibility of statements by alleged co-conspirators, (3) requesting suppression of statements made during text message communications with government agents, and (4) seeking suppression of the defendant's statements made during two custodial interrogation sessions. The defendant also presented a lengthy opposition to the government's motion regarding ISIS documents. The motions initially were set for hearing on April 7, 2021. However, the Court was compelled to adjourn the hearing several times due to the ongoing total closure of courthouse facilities in the district. On April 7, 2021, the Court held a hearing via video conferencing on two of the motions for which no witness testimony was offered — the defendant's motion for a bill of particulars and his motion to suppress co-conspirator statements. The motion regarding co-conspirator statements was denied without prejudice. The motion for a bill of particulars later was taken under advisement.

On June 28 and 29, 2021, soon after the phased reopening of the federal courthouse began for certain limited proceedings, the Court held a two-day in-person evidentiary hearing on the

parties' motions regarding admissibility of documents and other evidence.  The parties requested and were permitted an opportunity to submit lengthy supplemental briefs on the evidentiary presentation during the hearing, and that briefing was concluded on July 30, 2021.

The Theodore Levin Courthouse reopened for limited scheduling of in-person jury trials on September 7, 2021.  However, on that same date, the defendant filed an unopposed motion to adjourn the trial that had been set to commence on October 5, 2021.  The Court's order granting the requested adjournment included the following observations:

> The trial in this case is scheduled to begin on October 5, 2021. The parties have estimated that the trial will take approximately four weeks to complete. The principal grounds for the adjournment are concerns that have been advanced by counsel for both the defendant and the government relating to (1) the difficulty of conducting an in-person trial during the ongoing global pandemic, (2) prejudicial complications and delays that could result if the trial needs to be adjourned because jurors, counsel, witnesses, court staff, or the defendant are exposed to or infected with the coronavirus, (3) health risks faced by some members of the defense team due to personal medical factors that render themselves or their immediate family members acutely susceptible to severe consequences of a possible infection with the coronavirus, and (4) the prejudicial impact on the defense of compliance with certain mandatory safety protocols presently in effect in the Theodore Levin Courthouse, including the requirement that all persons must wear face masks at all times while in common areas of the building, including courtrooms. *See* E.D. Mich. Admin. Order 21-AO-022 (Sept. 3, 2021) ("[E]very person who comes to one of the courthouses of the Eastern District of Michigan must . . . [w]ear a mask that covers the person's nose and mouth. If the person does not have a mask, they will be provided one."). The government does not oppose the motion and concurs in the request to delay the trial based on concerns that mirror those advanced by the defense.

Order Adjourning Trial, ECF No. 180, PageID.2211 (Sept. 9, 2021).  The defense motion also cited projections published by the University of Michigan forecasting that the most severe surge to date in coronavirus cases throughout Michigan would reach its apex sometime in September or October 2021.  The motion was granted, and the trial was reset for January 11, 2022.

Between December 3, 2021 and December 28, 2021, the Court issued a series of opinions and orders addressing most of the parties' then-pending substantive pretrial motions: (1) granting

the defendant's motion for a bill of particular (ECF No. 182), (2) establishing procedures to address a potential conflict of interest issue that had been raised by the defense team (183), (3) denying the defendant's motions to suppress statements made during text communications and custodial interrogations (186), (4) denying the defendant's motion to dismiss the indictment, which had been filed without the assistance of counsel on November 12, 2021, and (5) denying the government's motion for an advance ruling on the admissibility of certain ISIS documents.  The Court also issued orders setting deadlines for the filing of motions *in limine* and other pretrial motions.

On December 22, 2021, the defendant filed four motions *in limine* challenging the admissibility at trial of testimony by several lay and expert witnesses identified by the government. On December 29, 2021, the defendant also filed a motion for a ruling on the admissibility of hearsay statements taken during interviews with government agents, due to the asserted unavailability of those witnesses for trial.

On December 30, 2021, the Court issued an opinion granting the government's two motions to delete certain classified information from its discovery production.

The case then proceeded apace toward the anticipated commencement of trial in early January 2022.  However, that was not to be, because on January 5, 2022 the government filed a notice of its interlocutory appeal of the Court's ruling on admissibility of ISIS documents.  On January 7, 2022, after finding that the appeal had divested the Court of jurisdiction, the Court ordered the trial adjourned without date pending resolution of the appeal.  The parties' final pretrial motions remain in limbo, although hearings on them were set, and later adjourned.

According to the latest information supplied by the parties, the appeal is fully briefed, and oral argument has been scheduled before the appellate panel on June 9, 2022.

- 11 -

On January 27, 2022, the defendant filed his second motion for release on bond.  The Court held an in-person hearing on February 24, 2022.  The parties were permitted to file supplemental briefs addressing the Due Process implications of the motions.

II.

Generally, the question of pretrial release is governed by the Bail Reform Act, which favors release.  18 U.S.C. § 3142(b); *United States v. Salerno,* 481 U.S. 739, 755 (1987) ("Liberty is the norm, and detention prior to trial or without trial is the carefully limited exception.").  However, if the Court determines after a hearing and considering the factors in section 3142(g) that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial."   18 U.S.C. § 3142(e)(1).   The Court made that determination most recently last year.

Prolonged pretrial detention, however, "can violate the Due Process Clause of the Fifth Amendment when it lasts long enough to become punitive."  *United States v. Nero*, 854 F. App'x 14, 16 (6th Cir. 2021) (citing *Bell*, 441 U.S. at 535); *Watson*, 475 F. App'x at 601.   The unconstitutionality of pretrial detention is assessed on a case-by-case basis by evaluating four factors: "(1) the length of the detention; (2) the extent of the prosecution's responsibility for the delay of the trial; (3) the gravity of the charges; and (4) the strength of the evidence upon which the detention was based."  *Watson*, 475 F. App'x at 601 (citing *United States v. Orena,* 986 F.2d 628, 630 (2d Cir. 1993)).

A.  Length of Detention

The defendant has been confined for 46 months and counting.  The Sixth Circuit has recognized similar delays as lengthy enough to prompt Due Process concerns.  *See Nero*, 854 F.

- 12 -

App'x at 17 (acknowledging 48-month delay as "a long time"). However, "'[t]he length of pretrial detention is not dispositive, and will, by itself, rarely offend due process.'" *Ibid.* (quoting *Watson*, 475 F. App'x at 601). "In cases involving long pretrial detentions, the government's part in the delay is often decisive." *Ibid.* As discussed further below, the government bears responsibility for a significant portion of the delay in this case.

### B. Responsibility for the Delay

The government argues that it is responsible for only about six months of the 46-month delay, the rest being attributable to the defense or scheduling complications caused by the pandemic. The record does not support that argument. Instead, the government bears sole responsibility for two significant portions of the total delay in this case since 2018.

The most concerning — and continuing — delay is caused by the government's misbegotten interlocutory appeal, which has caused the six-month (and counting) delay from the final posted trial date of January 11, 2022 through at least June 9, 2022, when the appeal has been scheduled for oral argument before the Sixth Circuit. That delay is of special concern due to the contrived grounds for the appeal. The government has made representations — questionable at best and, at worst, false — in an attempt to characterize this Court's order as one that could fit the criteria for an interlocutory appeal under 18 U.S.C. § 3731. The order appealed was entered after a two-day hearing on the government's motion for an advance ruling on the admissibility of certain documents seized from the ISIS organization and its military components on the battlefield and from hospitals in Syria and Iraq. The Court declined to grant the government's motion and outlined a procedure to address the admissibility of those items at trial. ECF No. 203, PageID.2355-56. But in its emergency motion to stay this case during the appeal, the government asserted:

- 13 -

> [T]he [district] court held that all of the documents were hearsay and were not admissible as coconspirator statements or records of regularly conducted activity; nor were they admissible under the residual exception. The court left open the possibility of revisiting its ruling on the coconspirator statements if new facts came to light during the government's case in chief. But after the two-day evidentiary hearing, and an earlier hearing addressing the defendant's statements to the FBI, there are no additional facts that could change the court's analysis.

Gov't Emer. Mot. to Stay, *United States v. Musaibli*, No. 22-1013 (6th Cir. Jan. 6, 2022) (ECF No. 11). That representation is questionable in two respects. *First*, the Court *did not hold* that the documents were *inadmissible* under the co-conspirator exclusion from the hearsay rule. Instead, the Court expressly declined to issue a ruling on that potential ground for admission, because it found that "[t]he current state of the record *does not allow a determination* that the statements in the exhibits tendered by the government at the evidentiary hearing qualify as non-hearsay under Rule 801(d)(2)(E)." Order Denying Mot. to Admit ISIS Docs., ECF No. 203, PageID.2348. The Court noted in particular that (1) "to establish that the documents advanced the goals of the particular conspiracy that has been charged in this case *requires careful parsing of proofs to discern what conspiracy has been proven to exist*, so that appropriate consideration can be given to whether 'the conspiracy' purportedly advanced by any hearsay statement offered was the same that the defendant joined," and (2) the defendant had suggested that he could offer evidence that he withdrew from the conspiracy on a date before some of the hearsay statements were uttered by conspirators, which may disqualify those statements from being admitted under the co-conspirator exclusion. None of those inconclusive findings by the Court constituted a "holding" that any documents were "inadmissible" under the co-conspirator exclusion. The Court then explained that "the prudent approach to this evidence will be to adopt the second *Vinson* option for dealing with that evidence, namely, to 'require the government to meet its initial burden by producing the non-hearsay evidence of conspiracy first prior to making the Enright finding concerning the hearsay's

admissibility.' *Vinson*, 606 F.2d at 152.  For now, however, at this liminal stage of the case, the Court cannot declare that the government's proposed exhibits constitute admissible evidence."

*Second*, the government asserted in its motion to stay that the Court's evidentiary opinion was in practical terms a conclusive ruling because "after the two-day evidentiary hearing, and an earlier hearing addressing the defendant's statements to the FBI, there are no additional facts that could change the court's analysis."  But that assertion flatly contradicts the government's earlier representations that the government would require four weeks to present its proofs in the case. *See* Order Adjourning Trial, ECF No. 180, PageID.2211 (Sept. 9, 2021).

One might dismiss these statements as exaggerations by an overly zealous and perhaps ethically-challenged appellate lawyer.  But the United States Attorney herself joined in the casuistry when she certified that the order to be appealed was "an order excluding evidence in this case," ECF No. 212-1, which, of course, it was not.

In light of those contradictory and suspect misrepresentations by the government, it certainly is reasonable to hold the government solely responsible at this juncture for at least six months of the ongoing delay from January through June 2022, which were occasioned entirely by the government's filing of an interlocutory appeal of questionable merit.

The government also must be held solely responsible for the entire period of delay from July 25, 2019, when the report of the first competency examination was conveyed to the defense, through February 14, 2020, when the report of the second examination finally was sent by the examiner to the Court.  That seven-month delay in the proceeding is entirely attributable to the failure or refusal by the government's examiner to comply with the express directions of the Court when it ordered the first competency evaluation.  Moreover, that delay *entirely preceded* the global pandemic crisis which compelled the closure of the courthouse and the cessation of jury trials for

almost 18 months. The delay therefore weighs particularly heavily against the government, because it contributed to displacing the trial from a window of time in which it might, with sufficient dispatch, have been concluded promptly, into an interregnum where commencement of the trial became impossible for nearly two more years.

In total, the government bears sole responsibility for at least 14 months out of the 46-month ongoing delay of this trial from the initial scheduled trial date. As discussed further below, the defense solely is responsible for, at most, 16 months of the total delay. Thus, the government bears nearly as much responsibility as the defense at present, and the burden which weighs against it only grows over time as the ongoing delay occasioned by the appeal continues.

The defendant insists that the entire three-year cumulative period during which various installments of the discovery production in the case were disclosed should be attributed to the government. However, that position overlooks the fact that the entire 17-month period from March 13, 2020 through September 7, 2021, during which the pandemic prevented the Court from convening any jury trials in criminal cases, properly is attributable to neither side in the case. *Nero*, 854 F. App'x at 18 (stating that "when a delay is attributable to the COVID-19 pandemic, courts have concluded that the delay is beyond the government's control.").

The defendant also overlooks the substantial portions of the delay that were prompted by numerous requests by the defense team for more time to review discovery that already had been produced, as well as additional time that was consumed by the first request for a competency evaluation, adjournments to allow the defense team to investigate and attempt to interview witnesses located abroad, time needed to allow additional members of the defense team to get up to speed on the case, and, finally, a delay of the trial from October 2021 through January 2022 that was requested by the defense due to concerns that the defendant would be prejudiced by a trial

conducted under onerous public health precautions, including the Court's directive that he be masked at all times during the presentation of the case.

Leaving aside the seven months of delay required for the second competency evaluation, and the 17 months of pandemic related delay which is attributable to neither party (a total of 24 months), the 16-month remainder of the 40-month delay from August 2018 through January 2022 is accounted for entirely by the numerous defense requests for adjournments, as well as the pendency of the defendant's first motion for a competency evaluation, and his numerous weighty pretrial motions, all of which required hearings and extended consideration by the Court in order to resolve all of the issues presented.

As accounted for above, the parties in this case bear nearly equivalent responsibility for instigating lengthy periods of delay in the case aside from those caused by factors beyond the control of either.  In addition to the objectively extreme length of the nearly four-year delay, the fact that the government bears significant culpability for causing an almost equal portion of the culpable delay versus the defense certainly prompts serious due process concerns and weighs in favor of pretrial release.

### C. Gravity of the Charges

The charges in this case are quite serious.  The defendant is alleged to have fought actively in a war zone in the service of a designated foreign terrorist organization for more than two years. He is alleged to have received military type training and to have used weapons of war in the course of that service, where he fought alongside hundreds of other jihadi soldiers in active combat.  The charges carry serious penalties with 10-to-50-year statutory sentencing ranges, and a potential sentencing guideline range of 360 months to life.  Moreover, Congress regarded the terrorism crimes charged in this case as so serious that they trigger a rebuttable presumption of pretrial detention under the Bail Reform Act.  *See* 18 U.S.C. § 3142.  There is no question that the crimes

here are among the most serious with which a defendant in federal court can be charged. *See United States v. Ceasar*, 10 F.4th 66, 79 (2d Cir. 2021) ("Terrorism represents a particularly grave threat because of the dangerousness of the crime and the difficulty of deterring and rehabilitating the criminal."); *United States v. Hendricks*, No. 16-265, 2019 WL 1282222, at *4 (N.D. Ohio Mar. 19, 2019) ("There is no question that Hendricks engaged in a serious criminal offense. ISIS. Terrorism. Those terms alone would likely be enough for an ordinary citizen to insist that Hendricks spend the rest of his life in prison."). The grave nature of the crimes charged in this case weighs heavily in favor of continued detention.

### D. Strength of the Evidence

Despite the Court's inability to render a definitive ruling on certain documentary evidence proffered by the government, it is beyond debate at this point that the case against the defendant is very strong. The principal and most damning element of the government's case certainly is the defendant's own narrative of his service to the ISIS cause, which was conveyed to government agents by intermittent text communications over a period of several months, as well as during two lengthy custodial interrogations. The Court already has ruled that the defendant's confession will be admissible at trial. "A confession is like no other evidence. Indeed, 'the defendant's own confession is probably the most probative and damaging evidence that can be admitted against him. . . . [T]he admissions of a defendant come from the actor himself, the most knowledgeable and unimpeachable source of information about his past conduct.'" *Arizona v. Fulminante*, 499 U.S. 279, 296 (1991) (quoting *Bruton v. United States*, 391 U.S. 123, 139-140 (White, J., dissenting)).

The defendant's narrative of his service with ISIS, as previously proffered during the various evidentiary hearings, amply supports the serious charges against him. He admitted, among other things, that he illegally entered Syria to enlist with ISIS, received months of military training

and religious indoctrination, swore loyalty to the jihadi cause, and fought for two years with ISIS forces in active combat in the region, including assignments to several active fronts in battles against coalition forces.  That evidence, if presented to the jury, supplies a compelling case for a finding of guilt.  It also amply bolsters the propriety of the Court's denial of the defendant's first motion for release on bond.  The strength of the evidence weighs heavily in this case in favor of continued detention.

### E. Risk of Flight & Danger to the Community

Although not recognized among the four pertinent due process factors, the defendant also addresses the pertinent considerations for pretrial release under the Bail Reform Act, namely the risk of flight and danger to the community.  18 U.S.C. § 3142(g).  He argues that the risk of flight and danger to the community are minimal, due to his present lack of means and a valid passport, and because he never has been accused of attacking "civilian" targets during his terrorist career.

The defendant's position on those points is belied by uncontroverted evidence that he previously exhibited great determination in traveling internationally and crossing borders illegally to arrive in a remote region of the Middle East where he enlisted with ISIS military forces.  In addition, he repeatedly has stated to the Court, to his counsel, and to government counsel and agents his desire to alight abroad and return to Yemen, and his frustration that the government refuses to negotiate a "deal" with him that would provide for deportation in lieu of prosecution. The record supplies no good grounds for any sound assurance that the defendant would not employ any means at his disposal to flee the jurisdiction if released.  Moreover, the severe risk posed by the potential release of a military-trained terrorist into the local community is obvious.

### III.

The length of the delay and the government's involvement in it raise serious concerns that the prolonged pretrial detention may trench upon the defendant's rights under the Due Process

Clause of the Fifth Amendment.  On balance, however, the factors point to no such violation.  The defendant likewise has not identified sufficient new facts to revisit the detention order under the Bail Reform Act.

Accordingly, it is **ORDERED** that the defendant's second motion for release on bond (ECF No. 225) is **DENIED** for the reasons stated above and those stated on the record.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   May 26, 2022