UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

        Plaintiff,

v.

Ibraheem Izzy Musaibli,

        Defendant.
_____/

Case No. 18-cr-20495

Hon. David M. Lawson

## Motion *in Limine* and Brief in Support to Exclude Government Exhibits under Fed. R. Evid. 401 and 403

Defendant Ibraheem Musaibli, by and through undersigned counsel, moves this Court to enter an order excluding certain exhibits identified by the Government under Federal Rules of Evidence 401 and 403. Defendant files a supporting brief and states that:

1. Defendant Musaibli is currently charged with providing material support to a designated foreign terrorist organization, in violation of 18 U.S.C. § 2339B; conspiracy to provide material support to a designated foreign terrorist organization, in violation of 18 U.S.C. § 2339B; and receipt of military style training from a foreign terrorist organization, in violation of 18 U.S.C. § 2339D(a).

2. The Government provided defense counsel with a draft exhibit list and made available for review at their office all or the majority of exhibits they intend to introduce at trial.

3. Defendant Musaibli moves to exclude a number of these exhibits due to their limited relevance and unfair prejudice. Specifically, Defendant moves to exclude:

   a. A video of Defendant Musaibli emailed to U.S. embassies in which he makes false statements thanking his family for sending him to support jihad and a transcript of that video.

   b. Photographs of Abu Bakr al-Baghdadi (the first person to claim leadership of the Islamic State) and Anwar al-Awlaki (an American Iman killed by a drone strike in Yemen in 2011).

   c. A photograph of James Foley (an American journalist) on his knees before he is beheaded by a member of ISIS in 2014.

   d. A military video of an airstrike on a building alleged to be an ISIS cash depot in Mosul, Iraq.

   e. Issues 7 to 11 of Dabiq (an English language magazine published by ISIS).

4. All the above exhibits have limited relevance to the issues that the jury will have to decide.

5. All the above exhibits will have an unfairly prejudicial impact on the jury.

6. Because of the low relevance, the unfair prejudicial impact substantially outweighs the relevance of the above exhibits and they should be excluded from evidence.

7. The Government also identified numerous excerpts from Defendant Musaibli's social media and mobile messaging conversations that they intend to introduce at trial.

8. Although the Government has not provided copies of excerpts, defense counsel was able to review several of them at the United States Attorney's Office.

9. Defense counsel is working with the Government and an interpreter to facilitate receiving a copy of the excerpts and review them for accuracy, completeness, and relevance.

10. Defense counsel reserves the right to object to portions of the excerpts on the above grounds once they have an opportunity to sufficiently review them.

11. Defense counsel will raise any concerns as soon as practical to avoid the necessity of the Government redacting or renumbering exhibits during trial.

Per the local rules, defense counsel communicated via phone with government counsel regarding this Motion and the legal basis for each objection. Government counsel does not concur in the requested relief in this Motion.

For the reasons above and in the accompanying brief, this Court should enter an order excluding from evidence the above identified exhibits.

[SPACE IS INTENTIONALLY BLANK]

**Brief in Support of Motion to Exclude Government Exhibits under Fed. R. Evid. 401 and 403**

The Government provided defense counsel with a draft exhibit list and allowed counsel to review most or all of their available exhibits at the United States Attorney's Office. Defense counsel believes that certain exhibits offered by the Government have no or limited relevance to the questions that must be decided by the jury and will unfairly prejudice Defendant Musaibli. Because of the low evidentiary value of these exhibits, this unfair prejudice substantially outweighs the relevance of the exhibits and they should be excluded under Federal Rules of Evidence 401 and 403.

### I. FEDERAL RULES OF EVIDENCE 401 AND 403 REQUIRE THE EXCLUSION OF PREJUDICAL EVIDENCE WITH A LOW PROBATIVE VALUE

Federal Rule of Evidence 401 generally controls what evidence should be admitted at trial:

> Evidence is relevant if:
> (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and
> (b) the fact is of consequence in determining the action.

Fed. R. Evid. 401.

Rule 401 is subsequently limited by Federal Rule of Evidence 403, which excludes some otherwise relevant evidence for various reasons

5

including unfair prejudice:

> The court may exclude otherwise relevant evidence if its probative value is substantially outweighed by the danger of one or more of the following: unfair prejudice . . . .

Fed. R. Evid. 403.

In determining whether evidence is admissible under Rule 403, "[t]he most important part of the balancing process is to assess the degree of probative worth and the degree of unfair prejudice. Just how probative and how prejudicial is the evidence? There is no scale or test in the usual sense, and trial judges must make the best estimate they can . . . evidence that is only marginally probative can be excluded even if its risk of unfair prejudice is not so great[.]" Christopher B. Mueller and Laird C. Kirkpatrick, *Federal Evidence* § 4:13 (3rd ed. 2007); *United States v. Al-Moayad*, 545 F.3d 139 (2d Cir. 2008) (evidence is unfairly prejudicial under Rule 403 when it is of little relevance to the defendant's current charges and the evidence, including through testimony, is highly charged or emotional).

This balancing principle is illustrated through the question of the admissibility of photographs of murder victims. In these cases, the photographs are often gruesome with the potential to prejudice the defendant by inflaming the jury based on the nature of the death. "The need factor, which counts in assessing the probative worth and unfair prejudice,

6

seems especially important in this setting. If there is no real issue on cause of death or identity of the victim, for example, arguments for exclusion on ground of prejudice are stronger." Mueller and Kirkpatrick, § 4:18.

This case does not involve the use of gruesome images by the Government of acts directly tied to Defendant Musaibli. The Assistant United States Attorneys prosecuting this case indicated that they will not use parts of videos or photographs that show beheadings or killings. However, they have indicated that they would refer to one or more instances of violence in an attempt to show that Defendant Musaibli knew of ISIS terrorist activity. None of these instances of violence are directly tied to Defendant Musaibli. Along with these references, the Government plans to introduce images taken just before horrific instances of violence that are pregnant with impending horror. Because of the low relevance and high potential for prejudice they should be excluded.

In addition of violence and gore, the Sixth Circuit recognizes that, especially in light of terrorist attacks in the United States, prejudice against persons of Middle Eastern descent can create a prejudicial backlash against a defendant.

> Acknowledging that it would have been impossible to conceal the ethnicity of the defendants and many witnesses entirely, the defendants persist that the Government had a duty to be particularly vigilant in

7

> this case (in view of the one-year anniversary of 9/11) and that the Government's conduct crossed the line between permissible and impermissible references to race established by several cited cases. While we agree with the defendants that the Government — and the district court as well — needed to be exceedingly mindful and watchful of these concerns, the references to ethnicity in this trial did not cross any prohibitory line.

*United States v. Shalash*, 108 F. App'x 269, 278-279 (6th Cir. 2004).

## II. APPLYING FED. R. EVID. 403 TO THESE EXHIBITS

### A. Objection 1 and 2: The video of Defendant Musaibli sent to U.S. embassies and the transcript of the video

From 2015 to 2017, Defendant Musaibli's brother-in-law Waseem Abdulkarem Al-Wajih, the ex-husband of his sister, was in a custody battle with the Musaibli family. Al-Wajih was in Yemen and the Musaibli family had pulled Al-Wajih's immigration petition for relative readjustment to allow him to come to the United States because of his abuse to Mr. Musaibli's sister. This cancellation of the petition began in 2015 and was finalized in 2017.

During this family conflict, Al-Wajih sent a video to various U.S. embassies in which Defendant Musaibli thanked his parents, sisters, brother for sending him to the Middle East for jihad and that he encouraged them to also come for Islamic jihad. There is no evidence that this was true. In fact, all the messaging between Defendant Musaibli and his family indicates that

8

the family does not support jihad and they are opposed to religious violence.[1]

While Defendant Musaibli does claim to be in ISIS territory, he makes this claim at other times, not accompanied by false allegations against his parents. This evidence will be cumulative with other evidence presented by the Government. It could also prejudice the jury against the Musaibli family and reinforce the stereotype that because they are an immigrant Muslim family, the are likely supporters of extremist violence. That prejudice will spillover to Defendant Musaibli, if the jury believes that all Muslim families, and the Musaibli family in particular, are supporters of terrorism, it will be impossible to convince them otherwise of such belief about Defendant Musaibli, regardless of the strength of the evidence regarding whether or not he actually provided any material support to ISIS.

### B. Objection 3 and 4: Photographs of Abu Bakr al-Baghdadi (the first person to claim leadership of the Islamic State) and Anwar al-Awlaki (an American Iman killed by a drone strike in Yemen in 2011)

The Government seeks to admit photographs of Abu Bakr al-Baghdadi and Anwar al-Awlaki. While the two men have some relevance to this case, al-Baghdadi was the leader of ISIS during the relevant timeframe and

---

[1] Here, jihad appears to be used as a shorthand for religiously motivated violence and conflict. While this is often the commonly understood usage of the term among western laypersons, its meaning within Islam is more complicated and could include an internal struggle to better oneself.

9

Defendant Musaibli is alleged to have listened to lectures of al-Awlaki, the men's appearance has nothing to do with the case.

Because defense counsel reviewed the exhibits at the United States Attorney's Office, and do not have copies, these photographs cannot be included with this Motion. However, both photographs depict the men in traditional garb, that many immediately associate with stereotypical conservative Islamic clerics, giving speeches or lectures. Instead, for example, the Government could have attempted to use an image of al-Awlaki from his time attending school in Colorado or Washington, D.C., or when he was in Falls Church, Virginia, where he appears westernized and non-threatening.

 

By using images of the persons in traditional dress, the Government deliberately reminds the jury that these men are from a different culture, foreign to be exact. The appearance of these men has no bearing at trial. Their

identification is not at issue. The images serve no purpose at trial except to remind the jury of prejudices, either explicit or subconscious, that Islam is a foreign religion that gives birth to violent terrorist.

### C. Objection 5: Photograph of James Foley

The Government intends to introduce a photograph of James Foley that appears to take just before he was murdered by beheading. While the image does not show a gruesome image or core, it portrays an atmosphere of impending violence. The Government seeks to introduce this photograph because Defendant Musaibli comments to TFO Wendy Kerner that he is aware of what happened to Mr. Foley and that he denounced that killing to others. The Government believes that this statement to TFO Kerner shows that Defendant Musaibli was aware of ISIS terrorist activities.

Leaving aside the fact that these admissions by Defendant Musaibli regarding Mr. Foley did not take place until May of 2018 at the earliest, when Defendant Musaibli was attempting to leave ISIS territory, Mr. Foley's appearance has nothing to do with this case. The photograph of Mr. Foley before his execution serves no legitimate purpose except to remind the jury of the brutality of ISIS. While the Government must prove that Defendant Musaibli was aware of ISIS' status as a terrorist organization or their commission of terrorist acts, the fact that ISIS committed this, and other

11

atrocities, is not in dispute during this trial. This photograph is unnecessary, does not tend to establish a fact at issue, and unfairly inflames the emotions of the jury without any evidentiary need.[2]

### D. Objection 6: Military video of bombing of ISIS cash depot

The Government seeks to introduce a military video[3] of the bombing of an ISIS building that was a cash depot to corroborate a statement by Defendant Musaibli that he needed money because ISIS was running low on cash. The fact that the bombing happened is not in dispute, nor that the building identified by the Department of Defense is a cash depot; however, the video does not make a contested fact more or less likely.

The danger of admitting the video is that, as a first-person view of the bombing of the depot, it makes the jury feel as if they are part of the military engagement with ISIS. This is a problem in this case. Material support of terrorism, particularly when the organization at issue is ISIS, which carried out attacks on western countries, is not a normal criminal offense.

---

[2] On December 5, 2022, during the required conference to seek concurrence under LCR 7.1, the Government stated that they would likely add a photograph of a Jordanian pilot who had been burned to death by ISIS. In the event this exhibit is added, Defendant Musaibli raises the same objection.

[3] The following link appears to show that same clip via a news source: *U.S. airstrike on ISIS cash depot sends money into air*, CNN (Jan. 15, 2016), https://www.cnn.com/videos/politics/2016/01/15/cash-flutters-after-airstrike-on-isis-cash-depot.cnn.

Since September 11, 2001, the United States is engaged in a global war on terror. Almost every American has been touched by the global conflict that sees the U.S. military constantly deployed overseas, putting many in harm's way. As Americans, almost all of us have a friend or loved one deploy overseas. We see the toll this has taken on their lives.

The jury cannot be a part of this war on terror that has consumed the nation for over twenty years. They must put this aside and, first and foremost, respect Defendant Musaibli's right to a fair trial and the constitutional guarantee that he be convicted only by evidence that proves his guilt beyond a reasonable doubt of the current charges, and not any views or judgments that are influenced by the war on terror. The video militarizes the issues in this case and thereby elevates both the confusion of the issues before a jury and prejudices Defendant Musaibli.

Because the video adds nothing to the Government's case that cannot be easily accomplished by the testimony of their military expert, the risk of prejudicing the jury substantially outweighs it non-existent or, at best negligible, probative value.

### E. Objection 7: Dabiq Issues 7-11

During his interview with TFO Kerner, Defendant Musaibli is alleged to have admitted that he was influenced to travel to Syria by things he read

13

in Dabiq magazine. The Government now seeks to introduce five issues of Dabiq that were published around the time Defendant Musaibli was in Yemen in 2015. They do so without knowing which issue or issues he read, what articles within any issue he may have looked at, nor do they know if he read any of those five issues. The Government only guesses that Defendant Musaibli may have read one of those issues.

Dabiq is an English language magazine published by ISIS. Its various issues contain articles about terrorist attacks on western nations (including an image of an airplane about to hit one of the World Trade Center buildings on September 11, 2001), discussions on whether female captives are classified as "Slave Girls or Prostitutes," images of beheadings and executions, all amidst many religious and political analysis articles. Without knowing which issues/articles were viewed by Defendant Musaibli, these magazines cannot be admitted into evidence for review by the jury. Magazines that Defendant Musaibli did not read have no evidentiary value and are not relevant to a determination of guilt. Allowing the admission of five magazines because *perhaps* he read one of them (assuming he did not read a copy of an older issue) is improper.

This is especially dangerous when the Government is attempting to infer intent from a defendant's reading material. For example, in *United*

14

*States v. Waters*, 627 F.3d 345 (9th Cir. 2010), the Ninth Circuit found the admission of anarchist literature in a case against someone convicted of arson was more prejudicial than probative. First, "a defendant's choice of reading material will rarely have a particularly significant probative value." *Waters*, 627 F.3d at 354. "[A]ttempts to use such evidence against a defendant must be viewed and reviewed with a careful and skeptical eye," more so when it is being introduced to potentially show a defendant's intent. *Waters*, 627 F.3d at 354. Second, some of the articles contained in that literature, much like in the five Dabiq issues in question, advocated violence in no uncertain terms, thus the "embrace of destruction is likely to have swayed jurors' emotions leading them to convict [the defendant] not because of the facts before them but because she represented a threat to their own values." *Waters*, 627 F.3d at 356.

### III. OTHER OBJECTIONS

The Government made available for review, but not provided to defense counsel, numerous excerpts from statements made by Defendant Musaibli. Counsel reviewed some, but not all of these excerpts given the time limitations and the Government's ongoing attempts at reducing the number of excerpts. The parties are discussing a timeline for the Government to produce copies of these excerpts to defense counsel so that they are

15

compared to the statements in discovery and reviewed by the defense translator. When this is facilitated, defense counsel will be able to raise any issues relating to accuracy, completeness, and unfair prejudice. Defendant reserves his right to raise these objections.

## CONCLUSION

For the reasons stated above, Defendant Musaibli requests that the Court grant the objections and deny admission of these highly prejudicial materials at trial.

                                      Submitted,

                                      <u>s/James R. Gerometta</u>
                                      James R. Gerometta
                                      Fabián Rentería Franco
                                      Counsel for Ibraheem I. Musaibli
                                      Federal Community Defender
                                      613 Abbott Street, Suite 500
                                      Detroit, Michigan 48226
                                      Phone: 313.967.5542
                                      Email: james_gerometta@fd.org


                                      John A. Shea (P37634)
                                      Counsel for Ibraheem I. Musaibli
                                      120 N. Fourth Avenue
                                      Ann Arbor, Michigan 48104
                                      Phone: 734.995.4646
Dated: December 5, 2022             Email: jashea@earthlink.net

## Certificate of Service

I certify that on December 5, 2022, a

Motion in Limine and Brief in Support to Exclude Government Exhibits under Fed. R. Evid. 401 and 403

was filed with the Clerk of the court using the CM/ECF system, which should send notification to registered opposing counsel.

s/ Fabián Rentería Franco
Fabián Rentería Franco
