UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

        Plaintiff,

v.

Ibraheem Izzy Musaibli,

        Defendant.

_____/

Case No. 18-cr-20495

Hon. David M. Lawson

**Response to Government's Motion to Exclude Duress Defense**

The Government moved to prohibit the defense of duress because Defendant Musaibli has not made a prima facie showing before trial that he can present evidence that could support all five elements of a duress defense: (1) that the defendant was under an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury; (2) that the defendant had not recklessly or negligently placed himself in a situation in which it was probable that he would be forced to choose the criminal conduct; (3) that the defendant had no reasonable, legal alternative to violating the law, a chance both to refuse to do the criminal act and also to avoid the threatened harm; (4) that a direct causal relationship may be reasonably anticipated between the criminal action taken and the avoidance of the threatened harm; and (5)

1

that the defendant did not maintain the illegal conduct any longer than absolutely necessary. R. 247, Gov Mt'n Preclude Duress Defense, PageID.2809.

The Government's principal argument is that the only way that Defendant Musaibli can substantiate and introduce his claim of duress is by testifying at trial himself, "a decision that he can make after opening statements and after the government rests is case." R. 247, PageID.2815. Thus, the defense should be prohibited from presenting an affirmative defense of duress to the jury in opening statements or questioning Government witnesses on the elements of that defense until after Defendant Musaibli testifies. *Id.*

This Government-endorsed course would create unprecedented challenges in the presentation of this case and prohibit the defense from undertaking its charge of defending Defendant Musaibli. It would create the need to recall almost every witness in the case after Defendant Musaibli testified, create undue burden on the jury to keep track of multiple testimony by several witnesses, create substantial expenditure of court resources, and a needless waste of time. More importantly, the inability of defense counsel to preview a duress defense in opening statements (which is not argument), while the Government is able to present their theory of the case, would be

overwhelmingly prejudicial to Defendant Musaibli.

Additionally, the Government's view that Defendant Musaibli cannot satisfy the elements of duress is based on their interpretation of the evidence and the inferences they draw from their evidence. The jury is not bound to accept these interpretations or draw these same inferences. The jury may accept Defendant Musaibli's testimony, even where it contradicts some of his prior statements or the Government's interpretation of the evidence. And as the Sixth Circuit notes in pattern jury instruction 6.05 for coercion and/or duress: "In order to raise the defense and warrant an instruction, the defendant need only present some evidence, *even weak evidence*, of all five elements of the defense." Sixth Circuit, Pattern Criminal Jury Instruction 6.05 (Mar. 21, 2021) (*citing United States v. Riffe*, 28 F.3d 565, 570 (6th Cir. 1994) and *United States v. Garner*, 529 F.2d 962, 970 (6th Cir. 1976)) (emphasis added).

## ARGUMENT

Defendant Musaibli intends to offer evidence that meets the burden of establishing a prima facie case for all five elements of duress. Below does not constitute all the evidence Defendant Musaibli intends to present. It is only intended to make a legally sufficient prima facie showing for the purpose of responding to the Government's motion in limine. Defendant Musaibli asks

this Court to set a hearing for argument to further present information if it deems the showing below insufficient.

1. **Defendant Musaibli was under an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury.**

Defendant Musaibli told Task Force Officer Wendy Kerner that he was imprisoned multiple times by ISIS. This testimony is supported by the statements of ISIS members interviewed by the FBI who stated that he was imprisoned multiple times. Defendant Musaibli was given the choice of joining ISIS or face imprisonment, torture, and potential execution by ISIS as a spy.

The Government claims there is no evidence that his imprisonment would lead to death or serous bodily injury, while at the same time seeking to introduce evidence of ISIS's overwhelming brutality to prove that Defendant Musaibli must have known that the organization was engaged in acts of terror when he travelled to Raqqa, Syria. The contradiction is obvious and entirely insufficient to throw aside Defendant Musaibli's fear of death or serious bodily injury. Specifically, in addition to Defendant Musaibli's testimony about the timing of his imprisonment and his fear of torture, defense counsel anticipates expert testimony about ISIS's treatment of prisoners and their execution of suspected spies. In short, there will be ample

4

testimony that if Defendant Musaibli ever assisted ISIS, he did so out of fear of death or serious bodily harm. ISIS's notoriety as a violent and brutal terrorist organization is a key component of their case. They cannot now claim that Defendant Musaibli had now reason to fear them. The duress defense is appropriate.[1]

### 2. Defendant Musaibli had not recklessly or negligently placed himself in a situation in which it was probable that he would be forced to choose the criminal conduct.

The Government contends that by travelling from the United States to Raqqa, Syria, Defendant Musaibli intentionally or recklessly put himself in a position where he would be forced to support ISIS. This a gross oversimplification of his travel, his life, the reasons for going to Syria, and the fluid situation on the ground at the time he travelled.

Defendant Musaibli traveled from the United States to Yemen to live with his wife and raise a family in the country where his wife was born and always resided. He also knew Yemen because that is his family's home

---

[1] The Government also notes that the duress could not have lasted the years that Defendant Musaibli provided support for ISIS. This statement assumes that he provided consistent and continual support for ISIS throughout his time residing in their territory. Again, his testimony, his statements to his family (admissible to rebut claims of recent fabrication under Federal Rule of Evidence 801(d)(1)(B)(i)) and the statements of other ISIS members interviewed by the FBI supports that he was under color of fear during the times he was under the control of ISIS.

country and where he spent numerous trips as a teenager visiting extended family. While there, he was moved by stories of the horrible punishment and killings of civilians that Syrian president Bashar al-Assad was inflicting during the Syrian civil war. The images of women and children suffering were of import to his understanding of the unjust hurt. Like many other young Muslim men, he traveled to Syria to see if he could help in some way. He did not go directly to the Islamic State territory. Instead, he visited several groups, some of which are classified as terrorist organizations and some of which are supported by the United States in Syria. While there, the road to Raqqa, the ISIS capital was sometimes open and sometimes closed. One of the times it opened he went there to see what life under ISIS was like. Admittedly, he was curious to see if they were a legitimate caliphate.

There is no dispute that he is Muslim, and much of the Government's own evidence confirms his interest in seeing what a Muslim state organized under Muslim law would be like. That does not mean he knew that, upon entering IS territory, he would be a virtual prisoner within that territory, not permitted to voluntarily leave. Unfortunately for Defendant Musaibli, by the time he arrived to Raqqa, the road closed behind him and he was not allowed to leave. His passport was taken along with other items by ISIS members.

In addition to Defendant Musaibli's testimony, there will be expert

6

testimony on the shifting situation on the ground in Syria, including the complex and changing alliances among opposition groups fighting al-Assad. There also will be expert testimony confirming that IS authorities, by policy, prevented persons from escaping their areas of control. Combined with Defendant Musaibli's testimony, a jury could find that his travel to Raqqa, while it turned out to be not a good idea, was not reckless or negligent for the purpose of a duress defense.

### 3. Defendant Musaibli had no reasonable, legal alternative to violating the law, a chance both to refuse to do the criminal act and also to avoid the threatened harm.

Again, the Government focuses on the amount of time Defendant Musaibli was in ISIS territory, two and a half years, and contends that he assisted ISIS during this entire time period, despite their own interviews that show he was selling Pepsi on the side of the road and sleeping in mosques because he was homeless. Those interviews also provide evidence that he actively avoided assisting ISIS, and was in trouble with them for speaking out against them

According to the Government, during some of this period he could have tried to flee ISIS territory. He did. The social media captured by the Government shows that he asked his parent's for money to hire a smuggler to try to flee ISIS territory. ISIS records show that he twice fled from the

7

battlefield in order to avoid fighting for ISIS. His testimony, the statements of ISIS members interviewed by the FBI, and his communications with by social medial will demonstrate that he attempted to avoid the criminal acts with which he is charged.

4. **There is a direct causal relationship that may be reasonably anticipated between the criminal action taken and the avoidance of the threatened harm.**

The Government contends that Defendant Musaibli's action in fighting for ISIS, rather than doing some other thing like Ribat, cooking, or cleaning, was not justified. This assumes that Defendant Musaibli was fighting for ISIS, rather than performing Ribat, cooking, or cleaning. This is hotly in dispute. Defendant Musaibli stated to TFO Kerner that he avoided combat and would often simply cook or clean in order to survive His testimony and prior statements will support this. The Government's witness Abdelhamid Al-Madioum has stated that Defendant Musaibli was on the problem list because he avoided fighting.

5. **Defendant Musaibli did not maintain the illegal conduct any longer than absolutely necessary.**

The Government believes that because Mr. Musaibli did not turn himself into the SDF when TFO Kerner recommended he do so, this shows that he engaged in illegal conduct longer than necessary. This fails for two reasons. First, turning himself into the SDF was not necessarily a viable

8

option. Expert testimony will show that the SDF is connected with the Kurdish terrorist group, PKK (Kurdistan Workers' Party). Defendant Musaibli had a reasonable fear that fleeing to Kurdish forces could result in worse imprisonment, torture, or even death if we were sold to al-Assad's forces.

Second, the Government assumes that when Defendant Musaibli was speaking with TFO Kerner he was supporting ISIS. The Government offers no evidence of this fact. They do have evidence, in the form of multiple statements from ISIS members about Defendant Musaibli not being an ISIS member, about him being homeless, and about him being suspected by ISIS as being a spy. (This shows some of the overlap between the duress defense and the relevance of evidence of Defendant Musaibli's withdrawal from the alleged conspiracy, if indeed he ever really joined it in the first place.) The jury could find that, based on Defendant Musaibli's testimony and the statements of ISIS members, he did leave ISIS as soon as he could, when their infrastructure began to break down, but did not and could not leave ISIS territory.

## CONCLUSION

Defendant Musaibli believes that this response makes a satisfactory prima facie showing required to allow the him to present evidence of duress

9

...

to the jury. This issue was raised by the Government during the final round of in limine briefing and defense counsel had only had one week to respond. The Government had ample notice for at least two years that this was an affirmative defense that Defendant Musaibli would seek to present at trial and could have raised this issue earlier. If the Court does not believe this showing is sufficient, it should schedule a hearing to allow Defendant Musaibli to make a more detailed showing.

Defendant Musaibli should be able to cross-examine Government witnesses on duress and discuss the theory in opening statement. If, at trial, he fails to make the required showing, the Court can decline to instruct on the theory, and instruct the jury to disregard any testimony regarding such defense.

John A. Shea (P37634)
Counsel for Ibraheem I. Musaibli
120 N. Fourth Avenue
Ann Arbor, Michigan 48104
Phone: 734.995.4646
Email: jashea@earthlink.net

Dated: December 12, 2022

Submitted,

s/James R. Gerometta
James R. Gerometta
Fabián Rentería Franco
Counsel for Ibraheem I. Musaibli
Federal Community Defender
613 Abbott Street, Suite 500
Detroit, Michigan 48226
Email: james_gerometta@fd.org
Phone: 313.967.5542

## Certificate of Service

I certify that on December 12, 2022, I filed

Response to Government's Motion to Preclude Duress Defense

through the court's docketing system, which should send notification to opposing counsel of record.

/s/ Fabián Rentería Franco
Fabián Rentería Franco
