UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

           Plaintiff,           Case Number 18-20495

v.                                          Honorable David M. Lawson

IBRAHEEM IZZY MUSAIBLI,

           Defendant.

_____/

## OPINION AND ORDER DENYING MOTION FOR MISTRIAL

On January 24, 2023, seven days into this trial, which now has lasted two weeks, the defense made an oral, mid-trial motion for a mistrial, which was precipitated by an unfortunate remark by the government's case agent, Wendy Kerner, during re-direct examination by government counsel. The following exchange with the witness occurred during the re-direct exam:

> MR. MOON: You were also asked about the timing and going over to pick up the defendant. Why did you go get him, Officer Kerner? Why not just leave him there?
>
> MS. KERNER. That's a question that people always ask. Why not just leave him there. He is an American citizen. He is an ISIS fighter. In my opinion, the most dangerous ISIS fighters are American citizens.

The government's question cannot fairly be based on any subject brought up in cross-examination, and the witness's unsolicited opinion about American ISIS fighters was not responsive to any of the legitimate issues in the case.

After the re-direct examination concluded, the defendant made an oral motion for a mistrial based on the government's improper elicitation of commentary appealing to the jury's "civic duty" to deliver a guilty verdict. Defense counsel further argued that the impact of the comment was magnified by the witness's habit of "volunteering" information throughout her testimony, but no specific instances of unprompted testimony were identified. The government opposed the motion

on the ground that, even if the remark was improper (which it was), there was no manifest necessity for a mistrial based on that sole prejudicial remark.

In a criminal case, courts may declare a mistrial "'whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for doing so.'" *United States v. Howard*, 815 F. App'x 69, 80 n.3 (6th Cir. 2020) (quoting *Renico v. Lett*, 559 U.S. 766, 773-74 (2010)). Such a declaration usually must occur "[b]efore a verdict is handed down." *Ibid.*

A determination of manifest necessity may be based on the injection into a trial of remarks by the government prosecutor or his witnesses that are "calculated to incite the passions and prejudices of the jurors . . . ." *United States v. Solivan*, 937 F.2d 1146, 1151 (6th Cir. 1991) (citing *Henderson v. United States*, 218 F.2d 14, 19-20 (6th Cir. 1955)). Along those lines of reasoning, it is well understood that "it is the duty of the prosecutor to advance the government's cause with force and persuasiveness," but "[t]he prosecutor has a concomitant duty not to derogate from a fair and impartial criminal proceeding." *Ibid.* (citing *Viereck v. United States*, 318 U.S. 236, 247 (1943)). An appeal to community interests or to the jurors' sense of civic duty is generally condemned. But "[t]he fairness or unfairness of comments appealing to the national or local community interests of jurors in a given instance will depend in great part on the nature of the community interest appealed to, and its relationship to, and the nature of, the wider social-political context to which it refers." *Ibid.*

In a case such as this, where the defendant is accused of fighting for a brutal foreign terrorist organization, which, as the government's evidence suggest, has its tentacles extending into the domestic front, a remark that American citizens, like the defendant, are "the most dangerous ISIS fighters," is particularly insidious. That is because "[t]he correlation between the community interest comments and the wider social-political context to a large extent controls the determination

of whether an appeal is deemed impermissible because it is calculated to inflame passion and prejudice." *Ibid.*

It also is improper to "bring to the jury's attention purported facts that are not in evidence and are prejudicial." *Id.* at 1151 (citing *United States v. Bess*, 593 F.2d 749, 754 (6th Cir. 1979); *United States v. Leon*, 534 F.2d 667, 679 (6th Cir. 1976)).

Agent Kerner's remark that "the most dangerous ISIS fighters are American citizens" has obvious prejudicial potential in that it could be received by the jury as an invitation to strike a blow in the War on Terror by convicting the defendant, who undisputedly is an American citizen, based on the implication that he is one of "the most dangerous fighters" employed by ISIS. The Sixth Circuit has held that similar appeals to the jury to convict a defendant in order to strike a blow in the "War on Drugs" amounted to prejudice mandating a mistrial. *E.g.*, *United States v. Solivan*, 937 F.2d 1146, 1153 (6th Cir. 1991) ("Here, defendant's constitutional right to a fair trial was violated because the appeal to the community conscience in the context of the War on Drugs prejudicially impacted on her."). Moreover, there is no support in the record for Kerner's spontaneous proposition that she has any expertise to assess the relative dangerousness of terrorists, or that she had any basis in fact to opine on the defendant's ranking in any such supposed hierarchy of dangerousness. It was, therefore, improper to put before the jury a prejudicial opinion about the defendant's dangerousness, which assumes facts not in evidence. *See Solivan*, 937 F.2d at 1151.

Nonetheless, the injection of such prejudicial material into a trial will not always establish manifest necessity for a mistrial. Where the trial is lengthy, the Court has given a cautionary instruction, and the legitimate evidence of guilt is compelling, the error may be deemed harmless. *Pierce v. United States*, 86 F.2d 949, 952 (6th Cir. 1936) ("The inquiry must always be as to

whether in view of the whole record the impression conveyed to the minds of jurors by irrelevant and prejudicial matter is such that the court may fairly say that it has not been successfully eradicated by the rulings of the trial judge, his admonition to counsel, and his instruction to the jurors to disregard it.").

Federal courts have held that no manifest necessity was demonstrated based on isolated prejudicial remarks, where the evidence of a defendant's guilt was overwhelming, and where the trial court undertook extensive efforts during *voir dire* and via curative instructions to mitigate any potential prejudicial impact. *E.g.*, *United States v. Khatallah*, 41 F.4th 608, 640 (D.C. Cir. 2022) ("In short, the record evidence overwhelmingly supports the jury's verdict, leaving little practical room for the prosecutor's appeals to nationalism and emotion to operate. Second, the district court took substantial steps to ensure that Khatallah was tried by an impartial jury and to mitigate any prejudicial effects of the prosecutor's inflammatory and misleading remarks."). Those same mitigating factors are present here.

First, the evidence of the defendant's guilt is substantial and has included dozens of conversations between the defendant and his family, acquaintances, and government agents in which he freely admitted that he traveled halfway around the world to enlist as an ISIS fighter, and then remained within the theater of the ISIS caliphate's war to establish an Islamic State for approximately three years. During that time frame the defendant admitted that he was trained in infantry tactics including the use of assault rifles, grenades, and other weapons of war; stood guard at ISIS positions; performed support duties such as cooking and cleaning for fellow ISIS troops; and engaged in active combat on the battlefield, during which he was struck in the head by gunfire. Almost the entire record in this case has been developed from the defendant's conversations on such topics memorialized in the archives of various messaging applications and on social media.

In addition, extensive testimony and an audio recording was presented covering the defendant's custodial confession in which he reiterated the narrative of his service while enlisted with the ISIS military branch. There has been virtually no evidence presented suggesting that the defendant did not in fact engage in the conduct that forms the basis of the charges. And although there is evidence in the record to support the defendant's defense of duress or coercion, it does not negate the incriminating effect of the defendant's admissions that have been presented that indicate that he entered ISIS territory and enlisted in service with the organization entirely on his own initiative, after a deliberate and sustained effort to that end. The defendant himself testified for more than three hours and in so doing confirmed on the record many of the details of his alleged involvement with ISIS that were revealed by other record evidence.

Second, the Court engaged in detailed and incisive individual *voir dire* of more than 50 members of the venire before choosing the 16 jurors who were empaneled. That inquisition touched on every aspect of personal prejudice that might be harbored by potential jurors based on the nature of the charges, the defendant's ethnic and religious background, associations in popular culture between Islam and terrorism, and any prior knowledge of the case. The extraordinary scope of the *voir dire* in this case was a substantial and deliberate effort to eliminate from the jury any potential prejudicial mindset.

Third, immediately after the inflammatory comment was made and an objection was lodged, the Court gave a curative instruction admonishing the witness, striking the comment from the record, and directing the jury to disregard it. The comment in this instance was an isolated misstep in the course of a lengthy trial that has spanned two weeks of jury selection and testimony. The curative instruction was given immediately, and no other instances of similarly prejudicial commentary have been identified. In similar circumstances, other courts have held that a mistrial

was not warranted.  *E.g.*, *United States v. Elashyi*, 554 F.3d 480, 507-08 (5th Cir. 2008) ("There is no doubt that the statement played for the jury had potential for prejudicial effect.  But the statement was a very short part of one of many recordings played for the jury during a two-week trial, and it was played only one time.  Counsel for Defendants noted that it 'went by so fast' when discussing how to respond to the Government's error.  There was no further comment on the prejudicial portion of the tape during the remainder of the lengthy trial.").

In indistinguishable circumstances, other federal courts have held that a mistrial was not warranted even where the commentary by the prosecutor was far more inflammatory.  *E.g.*, *Khatallah*, 41 F.4th at 636-37 ("The prosecutor then turned to the defense's argument that Khatallah had an innocent explanation for being at the Mission on the night of September 11th.  She continued: 'The defendant is guilty as sin. And he is a stone cold terrorist. Innocent presence? Innocent presence? . . . His hit squad was searing through the United States Mission, searing violently with rage — his rage against America, brandishing AK-47s, [rocket-propelled grenades] and all sorts of weapons to destroy us, those innocent men who are on the compound.'").  In this case, the comment carries palpably less prejudicial weight, and the same prophylactic measures of searching *voir dire* and curative instructions were taken to mitigate the risk of unfairness.

Accordingly, it is **ORDERED** that the defendant's oral motion for a mistrial (ECF No. 258) is **DENIED**.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Dated:   January 30, 2023